PAUL W. NOETHE *v.* ROSALIE G. NOETHE
(7126)

DUPONT, C. J., STOUGHTON and NORCOTT, Js.

Argued March 8—decision released June 13, 1989

*David J. Ordway,* for the appellant (plaintiff).

*Rosalie Griffith,* pro se, the appellee (defendant).

NORCOTT, J. This appeal arises as a result of events that occurred following the rendition of judgment in an action for dissolution of the parties' marriage. The plaintiff claims error in the trial court's denial of his motions to conform the judgment file to the judgment and to vacate a qualified domestic relations order.

On January 22, 1987, the trial court rendered a judgment of dissolution, incorporating the parties' written stipulation regarding the distribution of property. The portion of the stipulation relevant to this appeal is the parties' agreement that title to the marital home was to remain in the name of the defendant and that she pay the plaintiff $70,000 by March 1, 1987, in consider-

ation for his relinquishing his interest in the home.[1] Pursuant to this agreement, the defendant paid the $70,000, and the plaintiff vacated the marital home.

The plaintiff claims that in February, 1988, he received an Internal Revenue Service form 1099 from the defendant's accountants, informing him that the $70,000 he had received from the defendant would be treated as ordinary income. Believing that this buyout of the plaintiff's interest in the property was a nontaxable event, the plaintiff's attorney went to the courthouse to review the court file. He claims that the file contained loose copies of a judgment file signed by the trial court and the defendant's attorney, but not by him, and a qualified domestic relations order (QDRO) requested by the defendant and signed by the trial court. Although the request for the QDRO bore a certification by the defendant's attorney that copies had been mailed to all counsel of record, the plaintiff's attorney claims that neither he nor his cocounsel received copies of the request or the order. The record reflects that the request, the QDRO and the judgment file were not date stamped by the clerk's office and are not recorded on the docket sheet contained in the court file.

In the QDRO, the court ordered that $70,000 of the defendant's interest in her pension plan be assigned

---

[1] The relevant paragraphs of the stipulation provided:

"(3) Title to the marital home of the parties . . . is now held in the name of the Defendant;

"(4) Title to said premises is to remain in the name of the Defendant, the Plaintiff relinquishes any claim to said premises, and the Court is requested to assign, pursuant to its powers under Section 46b-81 (a) of the Connecticut General Statutes, whatever interest the Plaintiff has in said premises to the Defendant;

"(5) In return for said relinquishment and assignment of interest in real estate, the Defendant is to pay to the Plaintiff the consideration of seventy thousand dollars ($70,000);

"(6) The Defendant is to pay said sum to the Plaintiff on or before March 1, 1987."

to the plaintiff "in full satisfaction of any claim raised by the plaintiff-Husband with respect to any and all qualified pension plans and benefits of which the defendant-Wife is, or may be, or may become a beneficiary." The judgment file presented to the trial court reflected this order by adding a phrase not contained in the stipulation. The judgment file stated in pertinent part: "In consideration of said relinquishment and assignment as set forth in Paragraph C, the Defendant wife shall pay to the Plaintiff husband the consideration of Seventy Thousand Dollars, *said payment to be made from the Pension Plan of the Defendant wife by a Qualified Domestic Relations Order . . . .*" (Emphasis added.)

Claiming that he had no notice of the request for or the entry of the QDRO and that the order and the judgment file did not conform to the judgment of dissolution rendered earlier by the trial court, the plaintiff, on March 31, 1988, moved to vacate the order and to conform the judgment file. He argued that the $70,000 payment was made in consideration of his relinquishment of his interest in the marital home, not his relinquishment of any rights to the defendant's pension plan, and that the change placed an unreasonable and uncontemplated tax burden on him. After a hearing, the trial court denied the plaintiff's motions. This appeal ensued.

During the hearing on the plaintiff's motions, the defendant's attorney produced a copy of a judgment file signed by the plaintiff's attorney. The plaintiff's attorney stated that he did not know if the judgment file presented was the one he had signed and that, if it was, he had signed it mistakenly or inadvertently. The trial court concluded that by signing the judgment file the plaintiff's attorney had waived the plaintiff's objections to any nonconformity between the judgment

file and the judgment. The court also refused to review the QDRO because the attorney had signed the judgment file.

" ' "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . ." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Cookson* v. *Cookson,* 201 Conn. 229, 242–43, 514 A.2d 323 (1986).' *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 256–57, 524 A.2d 610 (1987)." *Ottaviani* v. *Pechi,* 16 Conn. App. 705, 710, 548 A.2d 1354 (1988). We hold that the trial court erred in concluding that the signing of a judgment file by the plaintiff's attorney resulted in a waiver of the plaintiff's substantive rights under the judgment.

Practice Book § 338 requires that counsel for the parties in a dissolution action sign the judgment file, certifying that it conforms to the judgment. Although in cases other than dissolution, the clerk of the court signs the judgment file; see Practice Book § 338; our Supreme Court has held that a judgment file, even in a dissolution action, is "merely a clerical document, and . . . the pronouncement by the court of the adopted provisions of the separation agreement is the judgment." *Lucisano* v. *Lucisano,* 200 Conn. 202, 206–207, 510 A.2d 186 (1986). The plaintiff's attorney alleged that if he had signed a judgment file containing the disputed phrase reflecting the QDRO, he had done so by mistake or inadvertence. Even if we assume that he did sign such a judgment file, it was a clerical act. " 'A clerical error is a mistake or omission in a judgment which is not the result of the judicial function.' " *LaPre* v. *Nibo Films, Ltd.,* 10 Conn. App. 669, 674 n.4, 525 A.2d 140 (1987), quoting *Ravizza* v. *Waldie,* 3 Conn. App. 491, 493, 490 A.2d 90 (1985). " 'If cleri-

cal, the error may be corrected at any time.' " *LaPre* v. *Nibo Films, Ltd.*, supra, quoting *Veranelli* v. *Luddy*, 130 Conn. 74, 79, 32 A.2d 61 (1943).

Only a judicial act and not a clerical act can change the substantive rights under a judgment. See *Veranelli* v. *Luddy*, supra, 82. The trial court therefore erred in concluding that the clerical act of counsel's signing a judgment file, an act alleged to have been a mistake, waived any underlying claims regarding judicial action alleged to have substantively changed rights embodied in an earlier judgment.

The defendant claims that the court could not have entertained the plaintiff's motions because they were not filed within four months of the signing of the QDRO and the judgment file.[2] The plaintiff counters that because a judgment file is a clerical document, it is not subject to a four month limit and may be corrected at any time. Although, as we noted earlier, the judgment file is a clerical document, it reflects previous judicial action. "If there is judicial error on the record, it may be corrected upon 'motion to open or set aside . . . filed within four months following the date on which it was rendered or passed.' General Statutes § 52-212a." *LaPre* v. *Nibo Films, Ltd.*, supra; see also

[2] General Statutes § 52-212a provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court."

Practice Book § 326 provides in pertinent part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court."

Practice Book § 326. The error in the judgment file claimed by the plaintiff is the inclusion of language in a QDRO allowing the defendant to pay the plaintiff from her pension plan. Because this language apparently reflects the judicial action of granting a request for a postjudgment order, it does not reflect clerical action. The thrust of the plaintiff's claim is that the court improperly granted the request for the QDRO. Thus, it was necessary for the plaintiff to bring the motion to vacate or set aside the QDRO within four months of its issuance.[3]

Although the record indicates that the trial court signed the QDRO on February 24, 1987, the plaintiff did not file his motion to vacate until March 31, 1988, thirteen months after the decision on the QDRO. The plaintiff claims, however, that the QDRO was rendered ex parte and that he did not have any knowledge of the order until his attorney reviewed the court file after the receipt of the form 1099.

As in the statutory right to appeal; see *Bridgeport Bowl-O-Rama, Inc.* v. *Zoning Board of Appeals,* 195 Conn. 276, 281, 487 A.2d 559 (1985); it is axiomatic that the right to move to open and vacate a judgment assumes that the party who is to exercise the right be given the opportunity to know that there is a judgment to open. We have indicated that for the purpose of opening a default judgment pursuant to General Statutes § 52-212, a delay in notifying the defendant of the judgment "would merely extend the time in which the defendant could move to set aside the judgment."

---

[3] The plaintiff has not claimed that the order was a consent judgment obtained through fraud, lack of consent or mutual mistake, claims to which the time limits of § 326 would not apply. See *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 429 A.2d 837 (1980). Although, by the terms of the QDRO, the trial court retained jurisdiction to amend the order to maintain conformity with the provisions of the Retirement Equity Act of 1984, the plaintiff does not claim that the court has continuing jurisdiction, as contemplated by § 326, to modify the order in aspects unrelated to federal law.

*DiSimone* v. *Vitello,* 6 Conn. App. 390, 393, 505 A.2d 745 (1986). We find this reasoning applicable to motions to open judgments brought pursuant to General Statutes § 52-212a and Practice Book § 326 as well. Because the trial court erroneously found waiver of the plaintiff's claims, it did not reach the question of when the plaintiff received notice and whether the motion to vacate the QDRO was timely. The existence of actual or constructive notice is a question of fact properly within the province of the trial court. *Middlebury* v. *Steinmann,* 189 Conn. 710, 714, 458 A.2d 393 (1983); *Mausch* v. *Hartford,* 184 Conn. 467, 469, 440 A.2d 157 (1981). On remand, the trial court must hold an evidentiary hearing to determine when the plaintiff received either actual or constructive notice and whether he filed the motion to vacate within four months of the date of notice.[4]

If the court determines that the plaintiff's motion to vacate the QDRO was untimely, then it must deny that motion and the motion to conform the judgment file. If, however, the court concludes that the motion to vacate was timely filed, then it must reach the merits of the plaintiff's motions.

There is error, the judgment is set aside and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[4] The parties have raised many unresolved factual questions relating to notice. These include whether the QDRO was in fact signed on February 24, 1987; whether the plaintiff's counsel actually received copies of the request, QDRO and judgment file certified by defendant's counsel as mailed on February 24, 1987; whether the defendant filed these documents with the court; whether the clerk's office scheduled a hearing on the motions and whether the plaintiff received notice of such hearing. Also at issue is whether the copy of the judgment file signed by the plaintiff's attorney contained the disputed language and, if so, whether receipt of that document constituted constructive notice of the order. If any of these events, or others, constituted notice, the court must determine the date of such notice in order to determine whether the motions were filed within four months of that date.