### KELLY RENZ *v.* ALLSTATE INSURANCE COMPANY ET AL.
### (AC 20367)

Zarella, Pellegrino and Peters, Js.

Argued October 27, 2000—officially released January 9, 2001

*Katherine Meshako,* for the appellant (plaintiff).

*Matthew Dallas Gordon,* for the appellee (named defendant).

*Opinion*

PETERS, J. The dispositive issue in this case is whether the legislature, in enacting what is now General Statutes § 38a-336 (d),[1] which prohibits the stacking of automobile insurance coverages, intended to have the prohibition apply to insurance policies issued in the gap period between the enactment of the statute on July 1, 1993, and its effective date. The issue arises in the context of a claim for stacking coverages that was based on an accident that occurred after the effective date of the statute. Relying on the effective date provision in Public Acts 1993, No. 93-297 (P.A. 93-297), § 29, which makes § 38a-336 (d) applicable "to acts or omissions occurring on or after January 1, 1994," the trial court concluded that stacking was prohibited. We disagree.

The plaintiff, Kelly Renz, filed a two count complaint to recover for injuries and losses that she had sustained as a result of an accident that had occurred on February 2, 1994. The accident resulted from the collision of three vehicles, her own vehicle, the uninsured vehicle of another motorist and a state police cruiser operated by a state trooper. In her first count, the plaintiff sought to recover from the defendant Allstate Insurance Company (Allstate) the uninsured motorist benefits provided under an automobile insurance policy that had

[1] General Statutes (Rev. to 1993) § 38a-336, as amended by Public Acts 1993, No. 93-297, § 1 (now § 38a-336 [d]), provides in relevant part: "Regardless of the number of policies issued, vehicles or premiums shown on a policy, premiums paid, persons covered, vehicles involved in an accident, or claims made, in no event shall the limit of liability for uninsured and underinsured motorist coverage applicable to two or more motor vehicles covered under the same or separate policies be added together to determine the limit of liability for such coverage available to an injured person or persons for any one accident. . . ."

been issued to her on August 21, 1993, and the uninsured motorist benefits provided under another automobile insurance policy that had been issued to her parents on September 23, 1993.[2] In her second count, she sought to recover from the defendant state of Connecticut for the alleged negligence of the state trooper.

The jury returned a verdict in favor of the plaintiff, awarding her $150,000 in damages against Allstate only. The merits of that verdict are not before us.

The only issue on which the parties continue to disagree is the extent of the plaintiff's insurance coverage after January 1, 1994, when § 38a-336 (d) became effective. By agreement of the parties, that issue was decided by the court after it accepted the jury verdict.

Without any further evidentiary hearings,[3] the court held that, pursuant to § 38a-336 (d), the plaintiff's recovery would be limited to $50,000. The court concluded that the reference in P.A. 93-297, § 29, to "acts or omissions" unambiguously encompassed an event such as an accident. In its analysis, therefore, the court focused on the date of the accident rather than on antecedent events occurring in the gap period. Having concluded that the statutory phrase was unambiguous, the court did not inquire into the statute's legislative history. It further concluded, on the basis of *Amica Mutual Ins. Co.* v. *Woods*, 48 Conn. App. 690, 711 A.2d 1208, cert. denied, 245 Conn. 916, 719 A.2d 900 (1998), that there was no constitutional impediment to applying the statute in this case. In the present case, the court held that even if the statutory mandate had retroactive aspects, the antistacking provision was enforceable because the plaintiff's 1993 contractual right to stacking had not

---

[2] It is undisputed that the plaintiff was an insured under the Allstate policy issued to her parents.

[3] Neither party has claimed, in this court, that the trial court improperly denied a request for an opportunity to present additional evidence.

vested prior to the accident in 1994. The plaintiff has appealed.

Whether the court properly applied § 38a-336 (d) under the undisputed circumstances of this case is a question of law that calls for plenary review. See *Turner* v. *Frowein*, 253 Conn. 312, 337, 752 A.2d 955 (2000); *Babcock* v. *Bridgeport Hospital*, 251 Conn. 790, 819, 742 A.2d 322 (1999). Neither party has argued to the contrary.

The plaintiff makes two arguments in support of her contention that the court improperly construed § 38a-336 (d) so as to limit her recovery, without stacking, to $50,000. First, she maintains that, as a matter of constitutional law, the court's construction and application of the statute result in an unconstitutional impairment of her contractual right to enforce the provisions of the Allstate policies issued in 1993. In this argument, she takes the position that the legislature lacked the power retroactively to abrogate allegedly vested rights that arose out of the issuance of the policies and the payment of premiums during the gap period. Second, as a matter of statutory law, she maintains that, in the absence of statutory language in § 38a-336 (d) that unequivocally manifests the legislature's intent to override stacking provisions contained in gap period policies, the statute should be construed to permit stacking in her case. In this argument, she focuses on the retroactive impact of a statutory change that substantially alters the effect of existing contractual agreements.

In accordance with the well established judicial caution that courts should explore the merits of nonconstitutional arguments before venturing into murky constitutional waters, we consider the plaintiff's latter argument first. See *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 230, 662 A.2d 1179 (1995); *State* v. *Torres*, 230 Conn. 372, 382, 645 A.2d 529 (1994).

Because we conclude that, properly construed, the statute affords the plaintiff the relief that she seeks, we do not reach the constitutional question that she has posited.

## THE FACTS

Even disagreements about statutory meaning are often informed by an understanding of the underlying factual circumstances that illuminate what is at stake. See *First Federal Bank, FSB* v. *Whitney Development Corp.*, 237 Conn. 679, 689–90, 677 A.2d 1363 (1996); *State* v. *Gerardi*, 237 Conn. 348, 360, 677 A.2d 937 (1996); *Kaminski* v. *Fairfield*, 216 Conn. 29, 35, 578 A.2d 1048 (1990). The relevant facts in this case are undisputed.

The plaintiff qualified for coverage under the uninsured motorist benefits provision contained in the Allstate automobile insurance policies issued to her and her parents during the gap period between the enactment of § 38a-336 (d) and its effective date. Because the required insurance premiums were paid when the policies were issued, the plaintiff had uninsured motorist coverage for a period of time that extended beyond the date of her accident. Allstate concedes that the plaintiff had such coverage. The disagreement between the parties is about the amount of the coverage.

If the plaintiff's accident had occurred before January 1, 1994, she would, in all likelihood, have been entitled to full recovery for her damages of $150,000 because she would have had the right to stack the uninsured motorist coverages[4] contained in the two Allstate policies.[5] That conclusion is supported by policy language

[4] Her damages fall within the coverage provided by the combined policies of $250,000.

[5] Although Allstate no longer concedes this point, at trial it told the court that "up until January of 1994, it may very well have been the case that, if the accident had happened four months earlier, the plaintiff would've been able to stack the coverages."

that expressly permitted stacking.[6] The declarations page of the Allstate policy issued to the plaintiff described uninsured and underinsured motorist coverage as "stackable." The declarations page of the Allstate policy issued to her parents stated that the limits of uninsured motorist coverage "may be combined."[7] The Allstate policies further expressly prohibited the combining of limits of insurance coverage for all parts of the policy *except* for Part V, which is the part that defines uninsured motorist coverage. Under these circumstances, as Allstate impliedly concedes, the plaintiff's contractual expectation of a right to stack coverages could not be characterized as unreasonable.

The Allstate policies nowhere alluded to the fact that, within the policy period, the stacking provisions contained therein might be superseded by § 38a-336 (d). Allstate has not argued that the plaintiff had actual notice of the impending statutory change. The plaintiff cannot be charged with constructive notice without a

---

[6] Allstate has not argued that these provisions are ambiguous.

[7] Allstate argues that the plaintiff had no right to stacking because she herself did not pay the premium for her parents' policy. We disagree.

The Allstate policy issued to the plaintiff's parents provided coverage for "you and any resident relative." Allstate does not deny that the plaintiff was a "resident relative" at the home of her parents. Allstate cites no authority for the proposition that the reasonableness of the plaintiff's expectation that she was contractually entitled to stacking depends on who paid the premium for an insurance policy that includes her within the class of insureds. *Kent* v. *Middlesex Mutual Assurance Co.*, 226 Conn. 427, 437–38, 627 A.2d 1319 (1993), is not to the contrary because it addresses stacking in the context of requirements of statutory and common law, while this case concerns stacking as a matter of contract law.

We also disagree with Allstate's assertion that statements contained on the declarations page of an automobile insurance policy are not to be considered as part of the insurance policy. Our case law is to the contrary. In *Kent* v. *Middlesex Mutual Assurance Co.*, supra, 226 Conn. 434–36, our Supreme Court considered the contents of a declarations page in determining whether stacking was permissible. See also *Dobuzinsky* v. *Middlesex Mutual Assurance Co.*, 49 Conn. App. 398, 408, 714 A.2d 702, cert. denied, 247 Conn. 908, 719 A.2d 902 (1998).

finding to that effect by the trier of fact. See *Middlebury* v. *Steinmann*, 189 Conn. 710, 714, 458 A.2d 393 (1983); *Mausch* v. *Hartford*, 184 Conn. 467, 469–70, 440 A.2d 157 (1981); *Noethe* v. *Noethe*, 18 Conn. App. 589, 596, 559 A.2d 1149 (1989). The record contains no such finding.

It is, however, notable that, unlike the plaintiff, Allstate was an active participant in the discussions leading to the enactment of the antistacking provision in § 38a-336 (d). Allstate representatives testified at a hearing held by the Insurance and Real Estate Committee in 1993 to consider the merits of House Bill No. 5176, the bill that eventually was enacted as P.A. 93-297 and codified in part as § 38a-336 (d). Paul Zigterman, representing Allstate, expressly supported the bill's provision for the elimination of stacking, which, in his view, was costly coverage that generally was not needed or desired by insured motorists. Conn. Joint Standing Committee Hearings, Insurance and Real Estate, Pt. 2, 1993 Sess., p. 491. At the same hearing, William Morgan, an Allstate agent, in his description of existing insurance coverages, stated that "many of the insurance companies have dealt with [stacking] themselves. Several companies now have offered an unstacked policy." Id., p. 482.

## THE LEGAL ISSUE

The plaintiff maintains that, under the present factual circumstances, the court improperly construed § 38a-336 (d) to preclude her access to stacked coverage for the accident that occurred after January 1, 1994, and therefore to limit her recovery to $50,000. She argues that (1) the legislative language, "acts and omissions," is sufficiently ambiguous to require inquiry into the intent of the legislature and (2) the legislature manifested no intention sub silentio to deny stacking rights to purchasers of paid-up gap policies that expressly confer such a right upon an insured. We agree.

For questions of statutory construction, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 227, 752 A.2d 1069 (2000); *Coelho* v. *ITT Hartford*, 251 Conn. 106, 110, 752 A.2d 1063 (1999); *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 6, 738 A.2d 623 (1999). If, however, the language of the statute unambiguously directs the outcome of a dispute, that ends the judicial inquiry. *Fishbein* v. *Kozlowski*, 252 Conn. 38, 46, 743 A.2d 1110 (1999); *Pitchell* v. *Hartford*, 247 Conn. 422, 432, 722 A.2d 797 (1999).

We turn first, therefore, to whether the phrase "acts or omissions" contained in P.A. 93-297, § 29, is an unambiguous statutory mandate that precludes access to stacking for any accident occurring after January 1, 1994. Although the court in this case so ruled, the decisions in other trial courts have been split. In two cases, the phrase was held to be ambiguous, and the antistacking provision was held inapplicable to gap policies. *Wozniak* v. *Keystone Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. 376435 (May 14, 1997) (19 Conn. L. Rptr. 423); *Patriot General Ins. Co.* v. *Normandie*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463778 (May 11, 1995) (14 Conn. L. Rptr. 311), rev'd on other grounds, 41 Conn. App. 66, 674 A.2d 861 (1996).[8] Subse-

---

[8] The parties cited other trial court cases that further prove the division among lower courts on this issue. In *Gutierrez* v. *Metropolitan Property & Casualty Co.*, Superior Court, judicial district of Hartford, Docket No. 551926 (January 8, 1998) (21 Conn. L. Rptr. 178), the court cited *Wozniak* and held that the antistacking provision was inapplicable to gap policies. In *Krzyczkowski* v. *Capobianco*, Superior Court, judicial district of Litchfield,

quent to the court's ruling in the present case, however, another trial court concurred in its conclusion. *Delcegno* v. *Hartford Casualty Ins. Co.*, Superior Court, judicial district of Fairfield, Docket No. 355119 (February 28, 2000) (26 Conn. L. Rptr. 652).

In this case, although the court acknowledged the split in trial court decisions, it did not address the merits of the reasoning contained in those cases. Instead, it based its conclusion that the phrase was unambiguous on this court's holding in *Amica Mutual Ins. Co.* v. *Woods,* supra, 48 Conn. App. 690. As the court observed, however, in *Amica* we *assumed* the applicability of the statutory provision there at issue.[9] Because *Amica* addressed questions of constitutional authority rather than questions of statutory construction, its holding is not instructive in this case.

Docket No. 070963 (February 27 1997), however, although the case did not center around the issue of stacking, the court held that because the accident occurred after January 1, 1994, § 38a-336, as amended by P.A. 93-297, was applicable to such policies.

[9] The *Amica* opinion contains none of the discussion that is normally part of the resolution of an issue of statutory construction. The opinion considers whether the plaintiff therein had vested rights or pending claims, but does not address the possible impact of retroactivity on the reasonable expectations of contracting parties.

Even if that case can be read, nonetheless, to encompass this issue, the facts of record therein describe a factual scenario that differs from that established in this case. *Amica* involved the claim of an insurance company for reimbursement of basic reparations benefits previously paid to or on behalf of its insured. The insurer sought to enforce the provision of a pre-1994 insurance policy that entitled it, by way of subrogation, to reach the proceeds of a settlement between the insured and a third party tortfeasor. The underlying accident, the original payment to the insured and the third party settlement all took place after January 1, 1994, the effective date of the statute prohibiting such subrogation in personal injury or wrongful death actions.

We are not persuaded that the legislature intended the same resolution of issues concerning retroactivity under the circumstances of this case. In *Amica,* it is not clear whether the proceeds of the third party settlement did anything more than to afford the insured therein the possibility of complete recovery for damages not wholly covered by basic reparations payments. In this case, without stacking, the plaintiff will not be made whole.

We conclude that the reference in P.A. 93-297, § 29, to "acts or omissions" does not unambiguously foreclose the plaintiff from enforcing the terms of gap policies permitting stacking. We disagree with the contrary holding of the court both as a matter of linguistics and as a matter of statutory construction.

With respect to linguistics, we decline to accept the presumed equivalence between "acts or omissions" and "accidents" on which the court apparently relied. Neither the court nor Allstate has cited any authority for such an equivalence. While it is true that compensable accidents often arise out of someone's "acts or omissions" at the scene, that fact does not resolve the meaning of the phrase. Not all "acts or omissions" arise as a result of an accident suffered by the policyholder. In the context of insurance law, disagreements about the timeliness of an insurance premium payment or of a notice of loss may well constitute "acts or omissions." Further, a policyholder may be injured in a vehicle collision with an uninsured motorist that results from preexisting mechanical defects or poor tire design. In such an accident, are the relevant "acts or omissions" determined by the date of the collision or by the date of the uninsured motorist's unreasonable failure to ensure that his or her vehicle could be driven safely? Although these questions may well be resolved easily on their merits, they persuade us that the phrase "acts or omissions" is not an unambiguous reference to automobile accidents.

With respect to statutory construction, we recognize that § 38a-336 (d) does not provide expressly for the continued enforceability of stacking provisions contained in gap insurance policies. Well established principles counsel, however, against applying ambiguous new statutory provisions retroactively if doing so would overturn reasonable expectations. "[W]e consistently have expressed reluctance to construe statutes retroac-

tively where the statutes affect substantial changes in the law, unless the legislative intent clearly and unequivocally appears otherwise." (Internal quotation marks omitted.) *Gil* v. *Courthouse One*, 239 Conn. 676, 686, 687 A.2d 146 (1997); *State* v. *Lizotte*, 200 Conn. 734, 741, 517 A.2d 610 (1986); see also General Statutes § 55-3.

We conclude, therefore, that the better construction of § 38a-336 (d) is to preclude its applicability to gap policies. This conclusion finds support in the positions taken by knowledgeable Connecticut authorities. In Bulletin PC-20, pt. 1, Conn. Bulletins (September 28, 1993), Robert R. Googins, insurance commissioner, expressed the view of his department with respect to the applicability of § 38a-336 (d). The bulletin states categorically that "policy provisions, coverage and premiums for policies issued with effective dates prior to January 1, 1994 . . . must be adhered to as written." Id. To the same effect, in J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (2d Ed. 1999) § 1.1, p. 6 n.3, the authors opine that changes brought about by § 38a-336 (d) "would apply only to policies issued or renewed after January 1, 1994."

The factual record in this case underscores the cogency of the principle of statutory construction that the legislature is presumed not to have intended the retroactive application of substantive changes in the law. As previously noted, Allstate was aware of the fact that substantial changes in the law of stacking were forthcoming. It has not alleged that it took any steps, through its network of insurance agents or otherwise, to assure some kind of disclosure of this fact to the plaintiff or her parents. Even if such disclosure was not mandatory, as a matter of good faith and fair dealing, Allstate has offered no reason for its drafting and issuance of insurance policies in the gap period that contained no warning that statutory changes might limit

the enforceability of the coverage for which the policyholders had contracted and paid. We are persuaded that the legislature did not intend § 38a-336 (d) to be applied, under these circumstances, so as to frustrate the plaintiff's reasonable construction of the unequivocal stacking terms in the relevant Allstate policies.

The judgment is reversed and the case is remanded with direction to render judgment awarding the plaintiff $150,000 from the defendant Allstate Insurance Company.

In this opinion the other judges concurred.