## TYLER E. LYMAN, INC. *v.* ALBERT C. LODRINI ET AL.
### (AC 19480)

Lavery, C. J., and Spear and Mihalakos, Js.

Argued December 4, 2000—officially released June 19, 2001

*James Colin Mulholland,* for the appellants (defendants).

*David P. Condon,* for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendants, Albert Lodrini and Virginia Lodrini, appeal following the denial of their motion to set aside the default judgment previously entered against them by the court. On appeal, the defendants claim that the trial court improperly (1) refused to take into account when they received actual or constructive notice of the judgment in determining the date on which the four month period for filing a motion to set aside the judgment had begun to run and (2) refused to address the defendants' claim that the judgment was flawed due to the plaintiff's failure to disclose a material fact to the court. We affirm the judgment of the trial court as to the defendant Virginia Lodrini and reverse the judgment as to the defendant Albert Lodrini on the basis of the first claim. We decline to address the second claim at this time because the trial court will, upon remand of the case, have a full opportunity to hear and to address Albert Lodrini's claims in this regard.

The following facts and procedural history are relevant to our consideration of this appeal. On November 12, 1994, the defendants entered into an agreement with the plaintiff to list a parcel of real property for sale. Pursuant to the listing agreement, the defendants promised to pay the plaintiff a commission of 10 percent of the sale price if the plaintiff produced a buyer ready, willing and able to purchase the property for a price acceptable to the defendants. The agreement was for a period of six months.

On January 7, 1995, the parties executed an addendum to that agreement. The addendum provided that the plaintiff may have a potential buyer for the property and, if it would disclose the potential buyer to the defendants and if the buyer purchased the property within two years, then the defendants agreed to compensate the plaintiff 10 percent of the purchase price as commission. The addendum listed one potential buyer as the Connecticut department of environmental protection (department).

On October 25, 1995, the defendants accepted the department's offer to purchase their property for $735,000. The defendants closed the sale with the department on December 11, 1997.[1] The defendants did not pay the plaintiff any commission on the sale.

On January 16, 1998, the plaintiff commenced this action, seeking the $73,500 in commissions to which it believed it was entitled pursuant to the terms of the listing agreement. The summons and complaint were served on Virginia Lodrini in hand. Service was made on Albert Lodrini at his residence. At the time, the Lodrinis were vacating their residence in Stonington as the result of an eviction action. In February, 1998, Virginia Lodrini went to live with relatives in Shakopee, Minnesota, and filed a change of address and forwarding order form with the United States Postal Service indicating her new address. On February 19, 1998, Albert Lodrini filed a change of address and forwarding order form with the postal service indicating a New Jersey relative's address as his new mailing address. He subsequently moved to New Jersey and periodically stayed with that relative but spent much of his time on the road looking for employment. When he was with

[1] Various conditions, including the need for bond commission approval, caused the period of twenty-six months between the agreement and the actual closing.

his relative, he checked his mail, but the relative picked his mail up at the post office while he was away.

On February 19, 1998, the court entered a default judgment against the defendants and in favor of the plaintiff in the amount of $73,732, which included the $73,500 commission plus $232 in interest. On February 26, 1998, the plaintiff's counsel mailed a notice of the default judgment to the defendants jointly at their previous address in Stonington. Also, on that date, the plaintiff's counsel filed a judgment lien on property owned by Albert Lodrini in Groton. That lien was certified to the defendants jointly at the Stonington address.

On March 12, 1998, a deputy sheriff served a certified copy of the judgment lien on Virginia Lodrini by sending it via registered mail, return receipt requested, to the same forwarding address in Minnesota that she had given to the postal service. On March 17, 1998, the sheriff received the return receipt card, signed by Virginia Lodrini. The same deputy sheriff served a certified copy of the lien by sending it via registered mail, return receipt requested, to Albert Lodrini at the address to which he had arranged to have his mail forwarded in New Jersey. The sheriff received the envelope containing the lien, returned by the postal service marked "unclaimed" on April 9, 1998.

On July 2, 1998, the court issued a bank execution to the plaintiff. On July 21, 1998, Albert Lodrini signed and subsequently filed a bank execution exemption claim form, indicating that his address was in New Jersey. On August 10, 1998, the court heard his request for an exemption.

On August 17, 1998, the defendants filed a motion to set aside the default judgment and to restore the case to the civil docket. The court denied that motion without a hearing on October 8, 1998. The defendants then filed a motion to reargue on October 27, 1998. On October

28, 1998, the court granted that motion and scheduled argument for November 23, 1998. On March 16, 1999, following the hearing, the court, in an oral decision, denied the defendants' motion to set aside the default judgment. This appeal followed.

General Statutes § 52-212[2] sets forth the procedure that a party must follow to open or set aside a default judgment. In addition to that statutory provision, several rules of practice address the procedures to open or set aside a default judgment. Practice Book § 17-28 provides that, after the court enters a default judgment, the plaintiff may not enforce it until twenty days have elapsed after the plaintiff or his attorney files with the court a certification that a copy of the judgment was served upon *each* judgment debtor.[3] Practice Book § 10-12, which Practice Book § 17-28 cites as one of the provisions governing notice of a default judgment, also refers to "*each* other party" and "*the* party sought to be defaulted . . . ."[4] (Emphasis added.) We also note

[2] General Statutes § 52-212 provides in relevant part: "(a) Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense.

"(b) The complaint or written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or defendant failed to appear. . . ."

[3] Practice Book § 17-28 provides in relevant part: "Execution upon [a default] judgment shall be stayed until twenty days after the clerk receives from the plaintiff, or plaintiff's attorney . . . a certification that one copy [of the judgment] was served upon each judgment debtor. Service and proof thereof must be made in accordance with Sections 10-12 through 10-14."

[4] Practice Book § 10-12 provides in relevant part: "(a) It is the responsibility of counsel . . . filing [documents] to serve on each other party . . . one copy of . . . every paper relating to . . . claim, notice or similar paper.

that Practice Book § 10-15, which excuses, in part, the need for service of all pleadings on all parties,[5] would be superfluous if, as the plaintiff asserts, notice to one party is sufficient to give notice to all parties.

"We interpret provisions of the Practice Book according to the same well settled principles of construction that we apply to the General Statutes. *State v. Cain*, 223 Conn. 731, 744, 613 A.2d 804 (1992); *State v. Genotti*, 220 Conn. 796, 807, 601 A.2d 1013 (1992). In determining the meaning of a statute, [it] must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . *Fleming v. Garnett*, 231 Conn. 77, 90, 646 A.2d 1308 (1994). We presume that there is a purpose behind every sentence, clause, or phrase used in an act and that *no part of a statute is superfluous.* . . . *Frillici v. Westport*, 231 Conn. 418, 432, 650 A.2d 557 (1994)." (Emphasis added; internal quotation marks omitted.) *Gateway Co. v. DiNoia*, 232 Conn. 223, 237, 654 A.2d 342 (1995).

Most telling on the issue of whether service on one defendant is sufficient or whether service on all is required is the actual form used, namely, form JD-CV-50 entitled, "Notice of judgment and order for weekly payments." Section III of that form is entitled, "Certification of service of notice and judgment to *all* parties."

---

. . .

"(b) It shall be the responsibility of counsel . . . at the time of filing a motion for default for failure to appear to serve the party sought to be defaulted with a copy of the motion. . . ."

[5] Practice Book § 10-15 provides in relevant part: "In any action in which there is an unusually large number of defendants, the judicial authority, upon motion or of its own initiative, may order that service of the pleadings of the defendants and replies thereto need not be made as between the defendants and that . . . the filing of any [cross complaint, counterclaim, or matter constituting an avoidance or affirmative defense] and service thereof upon the plaintiff shall be deemed to constitute due notice of it to the parties. . . ."

(Emphasis added.) The certification on the form provides: "This is to certify that a copy of this Notice and Judgment has been delivered/mailed via U.S. Mail, postage prepaid to the *Defendants* named below (Enter name(*s*) and address(*es*) of Defendant(*s*))." (Emphasis added.) The terminology on this form and the parenthetical inclusion of the plural forms indicate that the drafter envisioned that notice to multiple defendants would be required. Finally, the fact that the plaintiff sent copies of the judgment lien *separately* to the defendants at their respective new addresses shows the plaintiff's own recognition that it was required to serve both defendants.

It is, therefore, necessary to determine whether, as required by the rules of practice, notice of the default judgment was properly served on *all* defendants. It is undisputed that Virginia Lodrini received notice of the default judgment.[6] We, therefore, confine our analysis to the questions of whether proper notice of the default judgment was made on Albert Lodrini and, if so, when such notice was given, because it is that event that triggered the four month period within which he could have moved to set aside the judgment.

The facts in this case disclose that the plaintiff's counsel sent notice of the default judgment to the defendants at the same address, in Stonington, at a time when both had moved from that location and had filed separate forwarding orders as to their respective mail. At the hearing on the motion to open the default judgment, the postmaster of the Stonington post office testified that if a single piece of mail was sent to both defendants after they each had filed separate change of address

---

[6] Although there are exceptions to the rule requiring a party who seeks to open a default judgment to do so within four months of entry of the judgment, Virginia Lodrini did not specifically allege the applicability of any of those exceptions as grounds for her late filing of the motion to open the judgment.

cards reflecting different forwarding addresses, the postal service would return the item and not deliver it to either addressee. The only conclusion that reasonably can be drawn from that testimony is that Albert Lodrini did not receive notice of the default judgment. The record also discloses that the copy of the judgment lien sent to him was returned to the sender by the postal service. Thus, Albert Lodrini did not receive notice of the judgment by that mechanism either. The four month period within which he could file a motion to open, therefore, did not commence until he received actual notice of the existence of the judgment, which took place in July, 1998.

"[I]t is axiomatic that the right to move to open and vacate a judgment assumes that the party who is to exercise the right be given the opportunity to know that there is a judgment to open. We have indicated that for the purpose of opening a default judgment . . . a delay in notifying the defendant of the judgment would . . . extend the time in which the defendant could move to set aside the judgment." (Internal quotation marks omitted.) *Handy* v. *Minwax Co.*, 46 Conn. App. 54, 57, 698 A.2d 339, cert. denied, 243 Conn. 921, 701 A.2d 342 (1997); *Noethe* v. *Noethe*, 18 Conn. App. 589, 595, 559 A.2d 1149 (1989). As in this case, the defaulted party in *Handy* did not receive *actual* notice of the judgment in a timely manner. Also, as in this case, it was a later collateral event in *Handy*, that is, having been informed by the opposing party in response to a request for depositions, that actually provided the party with notice. The *Handy* court found that this later, actual notice triggered the four month period to file a motion to open.

In *Habura* v. *Kochanowicz*, 40 Conn. App. 590, 592, 672 A.2d 512 (1996), this court stated: "Where the defendants have not *received* notice of the default judgment . . . the time within which they may move to set aside the judgment is extended by the delay in notification."

(Emphasis added.) While it is true, as the plaintiff claims, that the mailing of the default judgment to the defendants raised a presumption of its receipt, the plaintiff ignores the fact that that presumption is rebuttable. The mailing of the decision "raises a presumption that notice was sent and received *in the absence of a finding to the contrary*." (Emphasis in original; internal quotation marks omitted.) Id., 594, quoting *Morelli* v. *Manpower, Inc.*, 34 Conn. App. 419, 423, 642 A.2d 9 (1994).

In this case, the court, in its decision, focused not on whether there was *actual* receipt by *both* defendants of notice of the judgment, as the cases require, but merely on the plaintiff's *efforts* to notify the defendants of the judgment. While those efforts may be laudable, they were unsuccessful, at least as to Albert Lodrini.

Albert Lodrini proffered sufficient evidence at the hearing on his motion to open the judgment to rebut the presumption that he had received the notice that had been sent to him. The postmaster testified that the practice of the postal service when an item is addressed to two or more individuals at a single address, where all named recipients have moved to separate addresses and have filed forwarding orders reflecting those new addresses, is to return the item to the sender. That evidence, unrebutted by the plaintiff, constitutes evidence that Albert Lodrini did not actually receive notice of the judgment. While in the absence of such evidence the court might have indulged the presumption of receipt, after hearing such unrebutted testimony it could no longer indulge that presumption.

Therefore, as we stated in *Habura*, because of the delay in Albert Lodrini's receiving notice of the default judgment, the time within which he could have moved to set aside the judgment was extended by the delay in notification. See *Habura* v. *Kochanowicz*, supra, 40 Conn. App. 592. The evidence he put forth at the hearing

on his motion to set aside the default judgment indicates that he did not become aware of the judgment until the plaintiff began to garnish his bank account in July, 1998. The motion to set aside the default judgment was filed on August 17, 1998, within four months of the time when he *actually* became aware of the existence of the judgment. Thus, under the principle we set forth in *Habura*, his motion to set aside the judgment was timely. Because there appears to be no dispute that Virginia Lodrini received notice of the judgment lien when it was originally sent, however, the motion to set aside is untimely as to her, and the court was correct in so finding.

The judgment is affirmed as to the defendant Virginia Lodrini. The judgment is reversed as to the defendant Albert Lodrini and the case is remanded for further proceedings to consider the merits of the motion to set aside the default judgment.

In this opinion the other judges concurred.