SERGIO ECHAVARRIA ET AL. *v.* NATIONAL
GRANGE MUTUAL INSURANCE COMPANY
(SC 17349)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

knowing whether [the plaintiff] was adequately performing her [employment] duties . . . ."

Argued May 16—officially released September 13, 2005

*Todd W. Whitford*, for the appellant (defendant).

*Michael P. Regan*, for the appellees (plaintiffs).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether the certificate of mailing log procedure utilized by the

defendant, the National Grange Mutual Insurance Company, to send a notice of cancellation of automobile insurance for the nonpayment of a premium to the plaintiffs, Sergio Echavarria and Altagracia[1] Echavarria, satisfies General Statutes § 38a-343 (a).[2] The defendant appeals[3] from the judgment of the trial court declaring that it had failed to prove that the notice of cancellation was sent, pursuant to § 38a-343 (a), because its mailing procedure was inadequate to show the chain of custody of the letter and it had failed to supplement a copy of the certificate of mailing with testimonial evidence that the notice was actually handed over to the post office. We reverse the judgment of the trial court.

[1] We note that this name is spelled differently throughout the record, either as Altagracia or Altagarcia.

[2] General Statutes § 38a-343 (a) provides: "No notice of cancellation of a policy to which section 38a-342 applies may be effective unless *sent*, by registered or certified mail *or by mail evidenced by a certificate of mailing*, or delivered by the insurer to the named insured, and any third party designated pursuant to section 38a-323a, at least forty-five days before the effective date of cancellation, except that (1) where cancellation is for nonpayment of the first premium on a new policy, at least fifteen days' notice of cancellation accompanied by the reason for cancellation shall be given, and (2) where cancellation is for nonpayment of any other premium, at least ten days' notice of cancellation accompanied by the reason for cancellation shall be given. No notice of cancellation of a policy which has been in effect for less than sixty days may be effective unless mailed or delivered by the insurer to the insured and any third party designee at least forty-five days before the effective date of cancellation, provided (A) at least fifteen days' notice shall be given where cancellation is for nonpayment of the first premium on a new policy, and (B) at least ten days' notice shall be given where cancellation is for nonpayment of any other premium or material misrepresentation. The notice of cancellation shall state or be accompanied by a statement specifying the reason for such cancellation. Any notice of cancellation for nonpayment of the first premium on a new policy may be retroactive to the effective date of such policy, provided at least fifteen days' notice has been given to the insured and any third party designee and payment of such premium has not been received during such notice period." (Emphasis added.)

[3] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The trial court reasonably could have found the following facts. The defendant is an insurance company located in Keene, New Hampshire, which writes insurance policies in Connecticut with the assistance of independent brokers. On June 28, 2000, Sergio Echavarria applied to the defendant for automobile insurance coverage for the plaintiffs for the period of June 29, 2000, to June 29, 2001, through their broker, Alliance Insurance Agency, LLC (Alliance). On the basis of the information set forth in the application, the broker initially generated a premium quote of $1685, which the plaintiffs paid to the defendant. The defendant subsequently refunded $17 to the plaintiffs after it determined that the actual price of the policy was only $1668.

The defendant thereafter contacted a vendor, DataRep Associates, to investigate further the plaintiffs' application because the defendant realized that there was a discrepancy between the number of vehicles and drivers listed thereon. A representative of the vendor contacted the insureds directly and determined that one of the vehicles listed on the plaintiffs' application as driven for pleasure actually was being used for the purpose of commuting to work. This resulted in an adjustment to the premium of $36, which increased the total premium on the plaintiffs' policy to $1704. The defendant sent the plaintiffs a revised declarations page notifying them of the adjustment via mail on September 17, 2000, followed by a bill requesting payment on October 9, 2000.

The plaintiffs failed to pay the remaining $36 of the premium by the October 29, 2000 deadline, and the defendant charged them a late fee of $10. Notice of the late fee was accompanied by a notice of cancellation letter, sent via mail evidenced by a certificate of mailing on November 9, 2000. The notice of cancellation warned the plaintiffs that their policy would be canceled on November 27, 2000, if they failed to pay by that date. The

plaintiffs made no further payments and the defendant thereafter returned the prorated balance of their premium to them by sending it to Alliance, their broker.[4] Subsequently, on June 18, 2001, Altagracia Echavarria was involved in a motor vehicle accident for which she sought coverage from the defendant. The defendant denied her coverage request on the basis that the plaintiffs' insurance had been canceled many months earlier for failure to pay the premium.

The defendant uses a certificate of mailing when it sends notices of cancellation to insureds located within the state of Connecticut. Its mailroom routinely generates a log page listing all of the cancellation notices received from the production area that are supposed to be mailed out. Each listing is assigned a log number, which also appears above the insured's name and address, along with the date of mailing on the cancellation notice itself. These notices are then placed into double window envelopes through which the log numbers are clearly visible. The stuffed envelopes are thereafter brought to a post office where a postal worker checks them against the log page. After the postal worker verifies that all of the envelopes being deposited match the ones listed on the log page and that the appropriate postage has been paid, the worker places a bull's-eye postmark stamp on the log page to indicate that the mail listed thereon was mailed on that particular date, and returns the log page to the defendant. The name Sergio Echavarria is listed on the log page that was stamped November 9, 2000, the date on which the

---

[4] We note that the refund check in the amount of $959, which was sent by the defendant to Alliance, as was common practice, on December 13, 2000, was not forwarded to the plaintiffs until July 11, 2001. This time lag was the fault of Alliance, which, by its own admission, inadvertently had deposited the plaintiffs' check into its own business account and had filed the receipt away until it was contacted by Altagracia Echavarria, who was requesting a renewal policy, on July 29, 2001.

notice of cancellation was sent by the defendant to the plaintiffs.

The plaintiffs subsequently brought this action to determine the respective rights of the parties pursuant to the policy of insurance,[5] and the trial court rendered judgment for the plaintiffs. The trial court noted the defendant's failure to provide firsthand testimony verifying that all of the cancellation notices listed actually had been delivered to the post office, and concluded that it could not determine whether the plaintiffs' notice actually had been delivered based upon the evidence that had been presented. This appeal followed.

On appeal, the defendant claims that its certificate of mailing log procedure satisfied the requirements of § 38a-343 (a) because: (1) the statute expressly permits the use of certificates of mailing as proof of mailing for insurance cancellation notices; (2) the statute does not require that the plaintiffs receive *actual* notice; and (3) there is no evidence that the plaintiffs failed to receive the notice of cancellation sent by the defendant on November 9, 2000. The plaintiffs contend, in response, that: (1) the defendant failed to show that its log procedure qualified as a "certificate of mailing" within the meaning of § 38a-343 (a); and (2) the trial court's conclusion that the defendant failed to prove that the notice of cancellation was placed in the custody of the post office is supported by the record. Additionally, as an alternative ground for affirming the judgment of the trial court, the plaintiffs contend that: (1) § 38a-343 (a)

---

[5] This action initially had been consolidated with an action brought by Quincy Mutual Fire Insurance against the plaintiffs arising out of the motor vehicle accident involving Altagracia Echavarria, which was thereafter settled. Additionally, on the date of trial, the plaintiffs abandoned their complaint against the defendant. The only issue addressed by the court at the time of trial was, therefore, the defendant's request for a declaratory judgment. After the trial court rendered judgment for the plaintiffs, the defendant filed a counterclaim for declaratory relief in order to conform the pleadings to the evidence that had been submitted by the parties.

requires *actual* notice of cancellation; and (2) there is sufficient evidence to support the conclusion that the plaintiffs never actually received the notice of cancellation. We agree with the defendant.

We begin by setting forth the standard of review. "The defendant's claim raises a question of statutory interpretation, over which our review is plenary. . . . Relevant legislation and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, '[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.'" (Citation omitted.) *State* v. *Boyd*, 272 Conn. 72, 76, 861 A.2d 1155 (2004).

The defendant first claims that the trial court improperly concluded that its certificate of mailing log procedure failed to satisfy § 38a-343 (a) because the statute specifies certificates of mailing as one of the four acceptable means of providing insureds with notice of cancellation, and it does not provide for the additional requirement of witness testimony about the chain of custody of the notice that was imposed by the trial court in the present case. We agree.

Section 38a-343 (a) expressly provides that "[n]o notice of cancellation of a policy . . . may be effective unless *sent,* by registered or certified mail *or by mail evidenced by a certificate of mailing . . . .*" (Emphasis added.) The plain language of § 38a-343 (a) clearly and unambiguously indicates that sending a notice of cancellation by mail evidenced by a certificate of mailing satisfies the obligation imposed by the statute. Moreover, there is no reference in the statute to any addi-

tional evidentiary requirement beyond the certificate itself as proof of mailing or any indication that the determination of the adequacy of any of the methods listed might be reserved to the judgment of the trial court. See, e.g., *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 119, 830 A.2d 1121 (2003) ("[w]e are not permitted to supply statutory language that the legislature may have chosen to omit" [internal quotation marks omitted]).

Moreover, as the defendant points out, imposing a requirement of testimony from a depositing witness eliminates the very need for a certificate of mailing that, by definition, serves as proof that the United States Postal Service received and sent a particular piece of mail.[6] "[I]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 536–37, 829 A.2d 818 (2003). Moreover, in the present case, the plaintiffs' counsel conceded at trial that "*in fact, it appears that the [defendant] sent the notice of cancellation to [Sergio] Echavarria.* The question as to whether or not that—the certification and the page that they presented is adequate to satisfy the requirements of the statute, is up to the trier of fact to find." (Emphasis added.) Accordingly, the trial court's concern about the lack of testimony as to whether the post office ever received custody of the notice is unfounded.

---

[6] Pursuant to 39 C.F.R., Pt. 3001, subpart C, app. A, § 947.11, the "[c]ertificate of mailing service is a service that furnishes *evidence of mailing.*" (Emphasis added.) The post office presumably would not, therefore, approve a certificate of mailing if it did not have in its custody the letter to be sent out.

Indeed, the trial court concluded that the defendant's log procedure constituted a valid certificate of mailing consistent with the requirements of the statute. The trial court admitted that it was "troubled by the method [the defendant] chose [to send the notification], even though it's *statutorily correct*." (Emphasis added.) Accordingly, the trial court's concern regarding the adequacy of the notice was essentially about the wisdom of the statute stemming from the court's perceived unreliability of certificates of mailing in general[7] and *not* a question about the proper characterization of the defendant's mailing process.[8] "The court [however] cannot read something into a statute . . . nor can it substitute

---

[7] We are inclined to agree with the trial court that certificates of mailing are not the most reliable forms of notification because they only evidence mailing and they are not traceable by the post office. Notwithstanding this fact, we are not at liberty to amend the statute as written. It clearly allows for certificates of mailing to stand alone as evidence of compliance with the statute. We, therefore, must defer to the legislature's judgment in the present case.

[8] We note that the defendant would prevail on the issue of adequacy of notice even if the trial court had challenged, as the plaintiffs attempt to do on appeal, the sufficiency of the defendant's mailing log procedure. Although we recognize that the plaintiffs failed to raise this issue at the trial court and do not reference any postal resources in their brief in support of their argument on appeal that the defendant's log page was not a certificate of mailing, we acknowledge that the United States Postal Service is the authority that defines and determines what constitutes a certificate of mailing. We, therefore, take judicial notice of the Domestic Mail Manual, which provides: "When requesting a certificate of mailing for three or more pieces of mail presented at one time, a mailer may use Form 3877 (firm mailing book) or a privately printed facsimile, subject to payment of the applicable fee for each item listed. *Privately printed Forms 3877 must contain the same information as the postal-provided form.* The sheets of the books become the sender's receipts. All entries made in firm mailing books must be made by typewriter, ink, or ballpoint pen. Alterations must be initialed by the mailer and accepting employee. All unused portions of the addressee column must be obliterated by drawing a diagonal line through them." (Emphasis added.) Domestic Mail Manual, Issue 55, S914.1.4 (January 10, 2000). The defendant's log sheet mirrors the United States Postal Services' Form 3877 and complies with all of the requirements for certificates of mailing that are listed in the Domestic Mail Manual. Accordingly, the trial court properly concluded that it was a statutorily correct method.

its judgment of what would constitute a wiser provision for the clearly expressed intent of the legislature." *United Aircraft Corp.* v. *Fusari*, 163 Conn. 401, 415, 311 A.2d 65 (1972). Accordingly, the trial court improperly interpreted § 38a-343 (a) as requiring additional proof beyond the certificate itself.[9]

The defendant next claims, with respect to the plaintiffs' alternate ground for affirming the trial court's judgment, that § 38a-343 (a) does not require the defendant to prove that the plaintiffs actually received notice, but only that notice was properly sent to them. Additionally, the defendant contends that, even if this court concludes that the defendant was obligated to provide actual notice, the plaintiffs have failed to overcome the presumption of receipt established by the mailbox rule;[10] therefore, the trial court's conclusion that the plaintiffs failed to receive actual notice was clearly erroneous. Without reaching the first issue about whether § 38a-343 (a) requires actual notice in all cases, we conclude that the trial court's finding that the plaintiffs failed to receive actual notice in the present case was clearly erroneous.

"A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings

[9] The plaintiffs also contend that framing the question regarding adequacy of the defendant's certificate of mailing log procedure as a legal one confuses an issue of fact with an issue of law. Specifically, the plaintiffs claim that "[t]he issue on appeal is whether the trial court's finding that the defendant had failed to establish the post office's receipt of an alleged notice of cancellation, by way of a purported certificate of mailing, is clearly erroneous." Such a determination, however, inherently depends upon the proper interpretation of the statute, and requires a *legal* conclusion as to what the legislature recognizes as proof of receipt and mailing on the part of the post office. In the present case, we conclude that pursuant to § 38a-343 (a), a certificate of mailing suffices.

[10] The mailbox rule is the name for the prevailing tenet in contract law that "in any case where a mailed acceptance is reasonable . . . [a] contract is regarded as made at the time and place that the letter of acceptance is put into the possession of the postal service." 1 A. Corbin, Contracts (1993) § 3.24, p. 437.

in the whole record . . . ." (Internal quotation marks omitted.) *State* v. *Mann*, 271 Conn. 300, 323, 857 A.2d 329 (2004). "[A] finding . . . is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Mele* v. *Hartford*, 270 Conn. 751, 767, 855 A.2d 196 (2004).

In the present case, the plaintiffs failed to put forth even a scintilla of evidence supporting their contention that they never received notice of the cancellation of their insurance policy from the defendant. Indeed, the record and pleadings are completely bereft of any such claim or factual support therefor. Additionally, the plaintiffs readily admit that they never testified before the trial court. Accordingly, their claim that they "have maintained throughout this litigation that they never received the alleged notice" is wholly unsupported by the record.

Ultimately, the resolution of the present issue is governed by the mailbox rule, which provides that a properly stamped and addressed letter that is placed into a mailbox or handed over to the United States Postal Service raises a rebuttable presumption that it will be received. 29 Am. Jur. 2d, Evidence § 262 (1994); see *Tyler E. Lyman, Inc.* v. *Lodrini*, 63 Conn. App. 739, 747, 780 A.2d 932, cert. denied, 258 Conn. 902, 782 A.2d 137 (2001). We already have concluded that the defendant has met its burden of proving that the notice of cancellation was sent to the plaintiffs. Pursuant to the mailbox rule, the burden then shifts to the plaintiffs to present evidence that rebuts this presumption.[11] The

---

[11] We recognize that our sister states require varying levels of evidence to rebut the presumption of receipt generated by the mailbox rule. See *Marston* v. *Bigelow*, 150 Mass. 45, 54, 22 N.E. 71 (1889) (denial of receipt by addressee presents issue of fact for jury to weigh along with other competent evidence); cf. *State of Louisiana ex rel. Guaranty Bank & Trust*

plaintiffs' *only* attempt to rebut the presumption of receipt of the notice of cancellation on appeal, however, involves a circular argument that requires speculation, namely: that the plaintiffs' failure to pay the remaining $48 balance of their insurance premium after initially already having paid $1685 toward it signifies a failure to receive notice. We cannot, however, properly attribute a factual basis to this assumption. See *State* v. *Smith*, 40 Conn. App. 789, 801, 673 A.2d 1149 ("[i]f the trial court's conclusions or findings of fact rest on speculation rather than on sufficient evidence, they are clearly erroneous"), cert. denied, 237 Conn. 915, 675 A.2d 886, cert. denied, 519 U.S. 873, 117 S. Ct. 191, 136 L. Ed. 2d 128 (1996). We, therefore, conclude that the trial's court finding respecting the issue of actual notice was clearly erroneous.

Inasmuch as the plaintiffs, by failing to allege that they did not receive notice of cancellation, have not succeeded in rebutting the presumption of receipt generated by the mailbox rule, we need not, and, in fact, *cannot* consider the issue of the statute's requirements respecting actual notice. To do so would result in nothing more than an advisory opinion,[12] and "[w]e have consistently held that we do not render advisory opinions. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal." (Citations omitted; internal quotation marks omitted.) *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1,

*Co.* v. *Downs*, 10 La. App. 234, 236, 119 So. 723 (1929) (denial of receipt by addressee sufficient, in and of itself, to overcome presumption that letter received despite proof of mailing). In the present case, however, we need not consider the sufficiency of evidence required to rebut the presumption of the mailbox rule because the plaintiffs have not denied receipt of notice.

[12] Even if § 38a-343 (a) requires actual notice, as the plaintiffs claim that it does, the plaintiffs cannot prevail in the present case because they have failed to rebut the presumption generated by the mailbox rule that they had, indeed, received notice of cancellation of their automobile insurance from the defendant at least fifteen days before it was canceled.

6–7, 688 A.2d 314 (1997). Accordingly, we reverse the judgment of the trial court on the other grounds set forth herein.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the defendant.

In this opinion the other justices concurred.