[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO OPEN/SET ASIDE JUDGMENT (##115.00 AND 115.50)
This matter comes before the court concerning the defendant Terrance Finnegan's Motion To Open/Set Aside Judgment (hereinafter, the "motion to open").[1] The court held an evidentiary hearing on the motion on May 20, 2002. After considering the evidence and the parties' arguments, the motion is denied, for the reasons set forth below.
 I. BACKGROUND
The plaintiff, Diane E. Wilson, commenced this action by a two count complaint, dated October 5, 1998.[2] In the first count, the plaintiff alleges that, on or about September 21, 1997, she leased residential premises in Clinton, Connecticut to defendants Dale Biscoglio and Kimberly Doak, but that they failed to pay rent due. In the second count, she alleges that Biscoglio, in his rental application, listed Finnegan as his then-present landlord. She further alleges, in paragraph 2, that she contacted Finnegan, who stated that he was the present landlord of Biscoglio and Doak and that they "were excellent tenants who paid the rent on time and maintained the property." She claims that she relied on this reference in entering into a lease for the premises with Biscoglio and Doak. She further asserts that Finnegan "was, in fact, not the owner of the premises" where Biscoglio and Doak resided, and that he was Biscoglio's employer at The Factory Pub and Restaurant when "he posed as the landlord" of the other defendants. (See complaint, count two, ¶ 4.) She contends that Finnegan committed fraud, causing her to incur damages, the rent which Biscoglio and Doak failed to pay.[3]
The court's file reflects that Finnegan filed a pro se appearance in this matter on October 20, 1998. In that appearance, he listed 151 Meadow Street, Hartford, Connecticut as his mailing address and 296-5250 as his phone number.
On December 21, 1998, after they failed to appear, the court (Higgins,CT Page 7057J.) entered judgment against Biscoglio and Doak in the amount of $3,036.78 (#102). A corrected judgment, as to these defendants only, in the amount of $3,221.78, was signed on January 27, 1999.
On February 17, 1999, the court entered a default for failure to plead against Finnegan (#105). On March 10, 1999, Finnegan filed a motion to open and set aside default (#107) and an answer and special defenses, in which he denied, the allegations of fraud set forth in the complaint (#108). As a consequence, the plaintiff's previously filed motion for judgment against Finnegan was denied by the court (Gordon, J.), on March 25, 1999 (#106). The plaintiff then claimed the case for the non-jury trial list (#110).
The matter was tried to the court (Wolven, J.) on October 4, 2001. See Memorandum of Decision, dated October 17, 2001, #113. In that decision, at page one, the court found that Finnegan "filed an appearance on his own behalf in this action, and was sent a notice of the court trial, however, he was not present during the proceeding." Plaintiff's trial Exhibit 1 is a copy of the court's notice, dated July 6, 2001, scheduling the matter for trial on October 4, 2001. It lists Finnegan's address as 151 Meadow Street, Hartford, CT 06109, the same address which he set forth in his appearance.
The court found that the plaintiff requested a reference from Finnegan concerning Biscoglio and Doak and that Finnegan "told her that he was their landlord, that they were very good tenants and that they paid their rent on time." See Memorandum of Decision, p. 1. The court found also that the plaintiff relied on this representation, which was false, in that Finnegan was not the landlord for the other defendants, he was the employer of one of them at the Factory Pub and Restaurant. See Memorandum of Decision, p. 2. The court found, by clear and convincing evidence, that Finnegan had posed as the landlord of the other defendants and had provided information to the plaintiff about them which he knew to be false, for the purpose of inducing her to rent her property to them. As a result, she suffered a financial loss. The court further found that judgment should enter against Finnegan in the amount of $3,221.78. See Memorandum of Decision, p. 3.[4]
On February 1, 2002, Finnegan filed the motion to open. In paragraph 2, he alleges that he "did not appear for trial . . . because he never received notice of the time and date of the trial." In paragraph 4, he states that he has a good defense to the action, asserting that he never spoke to the plaintiff regarding the other defendants' creditworthiness and that if the plaintiff spoke to someone claiming to be him, that person was impersonating him. He also claims that the plaintiff's loss occurred due to her own negligence, "in failing to make a proper check CT Page 7058 into the creditworthiness of her prospective tenant." (See motion to open, ¶ 4.) The motion to open was sworn to before Finnegan's counsel, who filed an appearance on his behalf.[5]
In response, the plaintiff filed an objection to the motion to open, containing various exhibits (#116).[6] The plaintiff contends that the judgment should not be opened because Finnegan has not shown that he was prevented from defending by "mistake, accident, or other reasonable cause. . . ." (See objection, p. 2.) Additional references to the facts are set forth below.
 II. STANDARD OF REVIEW
General Statutes § 52-212 (a)[7] and Practice Book §17-43(a)[8] provide for the setting aside of a judgment which the court has rendered upon a default or nonsuit. See Baris v. Southbend, Inc.,68 Conn. App. 546, 553, 791 A.2d 713 (2002). "Practice Book § 377 [now § 17-43 (a)] is almost identical to the statutory language [of § 52-212]. To obtain relief from a judgment rendered after default a two pronged test must be satisfied. The aggrieved person must show reasonable cause, or that a good defense existed at the time of the judgment, and that the movant was prevented by mistake, accident or other reasonable cause from making the defense . . . Practice Book §17-43(a) also provides that the `written motion shall be verified by the oath of the complainant or the complainant's attorney. . . .'" (Internal quotation marks omitted and citation omitted.) Opoku v. Grant,63 Conn. App. 686, 691, 778 A.2d 981 (2001).[9]
Where a movant fails to satisfy the requirements of the statute and the rules of practice, the court may decline to grant a motion to set aside a judgment. See Baris v. Southbend, Inc., supra, 68 Conn. App. 554.
"A court should not open a default judgment in cases where the defendants admit they received actual notice and simply chose to ignore the court's authority. Black v. Universal Credit C.I.T. Corp.,150 Conn. 188, 194, 187 A.2d 243 (1962). `Negligence is no ground for vacating a judgment, and it has been consistently held that the denial of a motion to open a default judgment should not be held an abuse of discretion where the failure to assert a defense was the result of negligence.' Pantlin Chananie Development Corp. v. Hartford Cement Building Supply Co., 196 Conn. 233, 240-41, 492 A.2d 159 (1985). Negligence of a party or his counsel is insufficient for purposes of § 52-212 to set aside a default judgment." State v. Ritz RealtyCorp., 63 Conn. App. 544, 548-549, 776 A.2d 1195 (2001).
"Parties are not justified in neglecting important legal matters merely CT Page 7059 because of the press or importance of other business and such negligence is ordinarily not excusable." Triton Associates v. Six New Corp.,14 Conn. App. 172, 177, 540 A.2d 95, cert. denied, 208 Conn. 806,545 A.2d 1104 (1988). "A party to a suit in court must give it the care and attention which a man of ordinary prudence usually bestows upon his important business. If he fails to do so he cannot obtain relief from a judgment resulting from his negligent failure to take the proceedings required for his protection." (Internal quotation marks omitted.) Motesv. Karzian Moving Storage, Inc., 31 Conn. Sup. 540, 542, 329 A.2d 624
(1974).
 III. DISCUSSION
The plaintiff does not concede that the defendant has a good defense. However, at the hearing, the parties agreed that, for the purposes of the motion to open, whether or not the defendant has a good defense to the action is not at issue. Tr. at 2-3. The issue before the court is whether the defendant was prevented by mistake, accident, or other reasonable cause from appearing at trial to make his defense.
In his argument, at the close of the hearing, the defendant asserted that he did not know whether or not he received the trial notice. Tr. at 52. He claims to have been distracted by the illness of his father. He also cites that he previously appeared in court in connection with the matter and asserts that when he left the courtroom, he was under the impression that the case "was in some respect over with respect to him." Tr. at 45. He asserts that "this was somehow in the back of his mind." Tr. at 45.
He contends that due process requires more than a presumption that he had notice of the trial. He also argues that the plaintiff bears responsibility for the situation, since, allegedly, she did not comply with a previous assignment list's directions.
In response to the court's question, as to whether it was his contention that, if he did receive the court's notice scheduling the matter for trial, he should still be excused from attending the trial, his counsel responded: "[n]o, Your Honor. . . . he does not recall receiving that notice. Nobody can establish that he got that notice." Tr. at 47. A similar question by the court later in the hearing brought forth a similar response from the defendant's counsel. Tr. at 54.
In her response, the plaintiff argues that the defendant purposely failed to appear at trial, in order to avoid being questioned, and that the record shows that he knew he was still part of the case. She noted also that the trial assignment list came out in June, 2001 and the CT Page 7060 court's notice of the October, 2001 trial date was sent in July, 2001, both in advance of the defendant's father becoming ill. She also claims that she had no obligation to provide notice of the trial date to the defendant. In addition, she notes that when the court sends out a notice, it is presumed to have been delivered.
"Fundamental tenets of due process require that all persons directly concerned in the result of an adjudication be given reasonable notice and opportunity to present their claims or defenses." Urich v. Fish,58 Conn. App. 176, 182, 753 A.2d 372 (2000). "The existence of actual or constructive notice is a question of fact properly within the province of the trial court." (Internal quotation marks omitted.) Handy v. MinwaxCo., Inc., 46 Conn. App. 54, 57, 698 A.2d 339, cert. denied, 243 Conn. 921,701 A.2d 342 (1997). In making such a finding it is "for the finder of fact to hear [the witnesses'] testimony and observe their demeanor. Credibility of testimony is a matter for the trial court." Habura v.Kochanowicz, 40 Conn. App. 590, 594, 672 A.2d 512 (1996).
Under Connecticut law, mailing of a court notice raises a presumption of its receipt. "[T]hat presumption is rebuttable. The mailing . . . raises a presumption that notice was sent and received in the absence ofa finding to the contrary." (Emphasis by the Appellate Court; internal quotation marks omitted.) Tyler E. Lyman., Inc. v. Lodrini,63 Conn. App. 739, 747, 780 A.2d 932, cert. denied, 258 Conn. 902,782 A.2d 137 (2001).
The court finds that the defendant received the trial notice in a timely manner. As the movant, the defendant had the burden of proving that he did not receive the court's trial notice. Although, in his motion to open, he swore, under oath, that he never received it, his testimony at the hearing before the court contradicted this sworn statement, since he stated that he did not remember or was unsure whether he received it or not.
For example, when asked on direct examination if he had ever received a mailed notice from the court informing him of the October 4, 2001 trial date, he responded, "[n]ot that I can recall. . . ." Tr. at 12. When asked a similar question, he responded again, "I couldn't honestly answer either way." Tr. at 14. On cross examination, when presented with Exhibit G, a copy of the court's trial notice, he said that it was correct to say that he might have gotten it and that he might not have gotten it, he was not sure. Tr. at 26. This equivocal testimony, in the face of the defendant's unequivocal prior sworn statement, undermines his credibility.
The defendant's credibility is further lessened by his statement CT Page 7061 concerning a previous court appearance which, ostensibly, led him to believe that he was no longer part of the case. After his first expression about not recalling whether or not he received the trial notice, as part of his explanation, he stated, "a lot of paperwork, or paperwork that was sent to the pub (his place of business in Hartford, the address of which he listed on his appearance) that, obviously, I think involves this case, was such that I thought I truly wasn't part of it in the sense that I'd already been to court and the judge had — I don't know what they do, but they told me to get out, that I had no — I wasn't part of this particular situation." Tr. at 12. He testified that he appeared in front of Judge Higgins and that when he left the courtroom, it was his understanding that, as to him, the case had been dropped. Tr. at 12-13.
As the court pointed out at the hearing on the motion to open, the history of this action, as reflected in the court's file, undermines the defendant's contention that, as of 2001, he thought he was out of the case. The record reflects that by March, 1999, after he appeared before Judge Higgins, and before the trial notice was sent in July, 2001, he knew that he was still a defendant. In response to the court's question, the defendant's counsel stated that the date of the appearance before Judge Higgins was December 21, 1998. Tr. at 15. As the court noted, the clerk subsequently entered a default for failure to plead against the defendant, on February 17, 1999 (#105). Tr. at 17. The defendant then filed a motion to open and set aside default (#107)[10] and his answer and special defenses (#108), both dated March 9, 1999. The court noted that, as of March, 1999, the defendant knew he was a defendant. Tr. at 17. In response, the defendant's counsel stated that he accepted these facts and apologized to the court. Tr. at 17.
The court's finding is further supported by the following. In contrast to the defendant, the plaintiff credibly testified that she received the court's assignment of court cases list for June 19, 2001 (Exhibit E) (hereafter, the "assignment list") and the trial notice, dated July 6, 2001, which scheduled the trial for October 4. 2001. Tr. at 40; see Exhibit G.[11]
The manner in which the defendant attended to his mail shows that his own inattentiveness led to his failure to appear. The defendant purchased The Factory Pub in Hartford, Connecticut, in 1997. He listed its address on his appearance in this action. Tr. at 23. The defendant testified that "I don't spend a lot of time there." Tr. at 20. "Sometimes" an employee at the pub opens the mail. Tr. at 20. When asked if his employees were authorized to open mail addressed to him personally, the defendant responded, "[i]t's not the kind of place that I get any personal mail. I'll tell you that. No." Tr. at 21. When his employee passed along mail CT Page 7062 for him which was received there, whether it contained bills or invoices, "[s]he would pile it up in a pile." Tr. at 21.
When asked how often he would go to the pub to see what was going on there, the defendant responded, "I would empty the change machines and pool tables once a week, and I would be there occasionally to do a deposit." Tr. at 22. As to whether he would look at the bills at that time, the defendant stated, "[o]ccasionally, but I certainly didn't make it a habit. We've been a pub that's been going on for five years. It's, hasn't been too booming so I haven't been exactly ecstatic about opening up all the bills. I see that they get paid." Tr. at 22. The defendant also acknowledged that he has not received any mailings concerning the case at his home address. Tr. at 23. He agreed that he does not recall which things from the court he received and which he did not, saying, "[s]ome of them are on my desk still, I'm sure." Tr. at 25.
From his own testimony, the court finds that the defendant placed little priority on promptly reviewing the mail he received at his place of business, the address he listed on his appearance as the location to which court-related notices were to be sent. Based on this record, the court concludes that the defendant's own negligence caused him to fail to appear for trial. He has failed to rebut the presumption that the mailed trial notice was timely received by him.[12]
Concerning the circumstances of his father's illness and subsequent death, the defendant stated that in the late summer and early fall of 2001, he was out of the state a great deal of the time in order to care for his father, who became ill and then died. Tr. at 14-15. He stated that this was a "three-or-four month process." Tr. at 18. During this time, he was away from Connecticut, in Saratoga Springs, New York, for three or four days a week, and had a person "watching the bar." Tr. at 14. The defendant's father passed away on Christmas Eve, December 24, 2001. Tr. at 15.
As noted above, the court has found that the trial notice was timely received by the defendant. Under the circumstances, the evidence shows that he received notice of the trial date shortly after July 6, 2001, before his father became ill. Even taking his outside estimate that the events concerning his father took four months, from when his father first became ill, the onset of the illness occurred in late August, 2001, weeks after the defendant received the trial notice. At that juncture, he could have sought a continuance of the trial date, based on the fact that he was helping a family member who had a serious illness. This court has no doubt that such a request would have been honored.
The court notes that, at the times in question, the defendant was CT Page 7063 proceeding pro se. The plaintiff was also then representing herself. She has worked as a paralegal for twenty years and had a greater knowledge of the court process than did the defendant. As our Appellate Court has stated, "[w]here a party appears pro se, as he has every right to do, his rights and claim should receive the same consideration as if he had been represented by an attorney. . . . Our courts attempt to be solicitous of the rights of pro se litigants and . . . will endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard. . . . Although we are lenient to parties who represent themselves, such leniency should not be invoked as to affect adversely the other parties' rights. . . . Furthermore, we will not wholly disregard our rules of practice, adherence to which is necessary in order that the parties may know their rights and in order that the real issues in controversy may be presented and determined." (Internal quotation marks omitted and citations omitted.) Lo Sacco v. Young, 20 Conn. App. 6,12, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 792 (1989).
From his filings in this case, including his motion to open and his answer, it is evident that the defendant was cognizant of the steps he needed to take to avoid the entry of a judgment by default. The record reflects that he knew enough to avail himself of the relief afforded by the rules of practice. Notwithstanding his pro se status, there is no reason why he could not have sought a continuance of the trial date. After all, by his own account, his father became ill in late August, weeks before the trial date. Although he was away from Connecticut for three or four days a week during the period after his father became ill, he was here on the other three or four days a week and could have taken steps to protect his rights. The circumstances would be different, for example, if the defendant's father had become ill just before the trial date, preventing the defendant, due to a family emergency, from being able to seek a continuance and from being able to attend the trial.
As a result of his failure to seek a continuance, the plaintiff was required to prepare for and appeal at the trial before the court in October, 2001. If the court now granted what is, in effect, the defendant' s-belated request for a continuance so that he can appear at trial, the court would be unfairly requiring the plaintiff to try her case again. The defendant has not sustained his burden to show that there is a legal basis on which to afford him such relief
In addition, the court is unpersuaded that any conduct by the plaintiff in response to the June, 2001 assignment list (Exhibit E) contributed to causing the defendant to fail to appear at the trial in October, 2001. The assignment list directed counsel and pro se parties to either appear at the call of the list or, prior thereto, to call the court's caseflow office, "with the following information: 1. estimated length of trial. CT Page 7064 2. The parties consent/do not consent to the case being heard by an Attorney Trial Referee [ATR]. 3. Any vacations/trials scheduled for all parties/counsel during Sept., Oct., Nov., or Dec." See Exhibit E.
Exhibit F, a telephone bill, dated July 3, 2001, reflects a phone call on June 13, 2001 to the court's caseflow office (phone no. 860-343-6320), followed by a phone call to the defendant's Hartford place of business (860-296-5250).[13] The court credits the plaintiff's testimony on this subject. At the time she made these calls the plaintiff had recently had emergency surgery. Tr. at 34. The plaintiff called the caseflow office on June 13, 2001, then she called the defendant. Tr. at 31. When the plaintiff spoke to the caseflow office, she was advised to call the defendant to find out if there were any scheduling conflicts for the months (October and November) in which she requested that the trial be scheduled. Tr. at 32. She did not recall reporting to caseflow about the length of the trial or about the parties' willingness to consent to a trial before an ATR. She was not asked about these topics. Tr. at 34-35.
Although the plaintiff attempted to reach the defendant by phone on June 13, she was unsuccessful. Tr. at 31. She left a message for him, but does not know whether or not it was passed along to the defendant. Tr. at 35. Exhibit F also reflects that she called his business phone number on four other, subsequent occasions, on June 15, 16, 18, and 19, 2001. She spoke to someone at the pub on each of those occasions. Tr. at 39. The defendant never returned any of her calls. Tr. at 40. She did not send him a letter about the upcoming trial. Tr. at 42.
The evidence in the record shows that the plaintiff was unsuccessful in her repeated attempts to contact the defendant at the pub in June, 2001. In view of the defendant's testimony to the effect that he spends little time there, this is unsurprising. Nevertheless, it was he who provided that phone number to the court in his appearance and, thereby, to the plaintiff.
The defendant cites no authority for the proposition that it was the plaintiff's obligation to communicate the trial schedule to the defendant in writing. She was not required send a letter to the defendant to communicate about the trial date. The record amply demonstrates that she repeatedly tried to reach him concerning the June, 2001 assignment list. The plaintiff can hardly be faulted for the circumstances the defendant created in making himself inaccessible by telephone. The defendant has not shown that anything the plaintiff did caused him to miss the trial date.
In addition, the court is unpersuaded by the defendant's argument that it should find that he did not receive notice of the trial date based on CT Page 7065 the fact that, previously, he had appeared in court. His previous court appearances, apparently on two occasions, in December, 1998 before Judge Higgins, and in March, 1999, when the motion for judgment appeared on the short calendar (Tr. at 41), occurred more than two years before the events described above. The court declines to draw the requested inference.
"In a civil case, proof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact." Service Road Corp. v. Quinn, 241 Conn. 630, 641,698 A.2d 258 (1997). Here, the evidence does not produce such a reasonable belief in support of the requested inference. To the contrary, the most probable explanation for the defendant's failure to appear in October, 2001 is that he let the case "slip through the cracks." The record of events from June, 2001 forward shows that the defendant received the trial notice, and that he was inattentive concerning this matter. Only after he received the court's adverse judgment did he resume his effort to defend himself.
Under the circumstances, the defendant has not met his burden to show that he "was prevented by mistake, accident or other reasonable cause from . . . appearing." See P. B. § 17-43. Accordingly, the motion to open is denied.
 CONCLUSION
For the foregoing reasons, the motion to open is denied. It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT