# FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF FIRST CONSTITUTION BANK v. JOSEPH M. CALDRELLO ET AL.
## (AC 20144)

Foti, Flynn and O'Connell, Js.

Argued November 29, 2001—officially released January 25, 2002*

---

* January 25, 2002, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Richard D. Haviland,* for the appellants (named defendant et al.).

*Donald E. Frechette,* with whom was *Joshua L. Milrad,* for the appellee (plaintiff).

*Opinion*

FOTI, J. The defendants Joseph M. Caldrello and Sandra V. Caldrello[1] appeal from the trial court's judgment of strict foreclosure. On appeal, the defendants argue that the court improperly (1) opened the judgment of nonsuit more than twenty months after it had been rendered, (2) allowed the plaintiff, the Federal Deposit Insurance Corporation (FDIC), to introduce certain evidence and the testimony of a witness, which had not been disclosed to the defendants until the eve of trial, and (3) failed to adjust the verdict for the undisputed unclean hands of the FDIC. We affirm the judgment of the trial court.

The following facts are undisputed. On November 22, 1988, the defendants executed a mortgage and note to First Constitution Bank (bank) in the amount of $2.2 million. In September, 1989, the bank commenced an action to foreclose the mortgage. The defendants filed an answer and counterclaim, denying that the note was in default and claiming an improper setoff by the bank against certain certificates of deposit owned by the defendants. On September 8, 1992, the court rendered a judgment of strict foreclosure in favor of the bank and against the defendants on the complaint and counterclaim. On October 2, 1992, the bank was declared

---

[1] Several subsequent encumbrancers were named as defendants but are not involved in this appeal. We refer in this opinion to the Caldrellos as the defendants.

insolvent, and the FDIC was appointed as receiver. By decision released April 11, 1995, this court reversed the judgment of strict foreclosure and remanded the case for a new trial. *First Constitution Bank* v. *Caldrello*, 37 Conn. App. 529, 656 A.2d 1053 (1995).

On June 23, 1995, a judgment of nonsuit was rendered against the FDIC for failure to appear at a pretrial conference. On January 21, 1997, the FDIC filed a motion to open the judgment of nonsuit, claiming, inter alia, that it never received notice of the pretrial conference. Following a hearing, the court granted the motion over the defendants' objection. The court subsequently rendered a judgment of strict foreclosure. The defendants then filed the present appeal.[2]

I

The defendants first argue that the court lacked the authority to open the judgment of nonsuit more than twenty months after it had been rendered. [3] The defendants contend that the court found that the FDIC had received notice and, therefore, improperly granted the motion to open. We disagree.

General Statutes § 52-212 provides in relevant part that "[a]ny judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set

---

[2] On September 11, 2000, this court ordered that Republic Credit Corporation be permitted to intervene as an appellee in this appeal. This court further ordered that the FDIC remain a party in the case. On September 27, 2000, this court remanded this case to the trial court for a hearing to consider the effect of the FDIC's purchase of the subject properties at a tax sale and whether the mortgage being foreclosed was extinguished by the tax sale. On July 18, 2001, the trial court filed its memorandum of decision in which it concluded that the mortgage being foreclosed was not extinguished and is still viable.

[3] The defendants specifically argue that the court had no jurisdiction to open the judgment of nonsuit. The defendants' claim, however, challenges the court's general statutory authority to grant relief, not the court's jurisdiction. See *Kim* v. *Magnotta*, 249 Conn. 94, 102–103, 733 A.2d 809 (1999); *Opoku* v. *Grant*, 63 Conn. App. 686, 689–90 n.2, 778 A.2d 981 (2001).

aside, within four months following the date on which it was rendered or passed . . . upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense."

"[I]t is axiomatic that the right to move to open and vacate a judgment assumes that the party who is to exercise the right be given the opportunity to know that there is a judgment to open." (Internal quotation marks omitted.) *Habura* v. *Kochanowicz*, 40 Conn. App. 590, 593, 672 A.2d 512 (1996). "In *Habura* v. *Kochanowicz*, [supra, 592], this court stated: 'Where the defendants have not *received* notice of the default judgment . . . the time within which they may move to set aside the judgment is extended by the delay in notification.' " (Emphasis in original.) *Tyler E. Lyman, Inc.* v. *Lodrini*, 63 Conn. App. 739, 746–47, 780 A.2d 932, cert. denied, 258 Conn. 902, 782 A.2d 137 (2001). The FDIC argues, and we agree, that the court was presented with sufficient evidence demonstrating that it did not receive notice of the entry of the nonsuit in a timely manner and that it filed its motion to open within four months of receiving notice.

The nonsuit was rendered against the FDIC on June 23, 1995, based on the failure of the FDIC to attend a pretrial conference scheduled for June 15, 1995. On January 21, 1997, the FDIC filed a motion to open the judgment of nonsuit. On March 10, 1997, the FDIC filed a brief in support of its motion. Attached to this brief was the affidavit of Penny Seaman, an attorney who represented the bank from the commencement of the action until after the initial judgment of strict foreclo-

sure on September 8, 1992. Seaman stated in this affidavit that after the FDIC was named receiver of the bank on October 2, 1992, the FDIC obtained other counsel and that she requested permission to withdraw as counsel for the bank. Seaman further stated that she had received no communication from the Superior Court since the defendants filed their initial appeal with the Appellate Court and that she did not learn that the case had been remanded by this court until February 24, 1997, when she received a telephone call from counsel for the FDIC. Seaman specifically stated that she never received notice of the pretrial conference scheduled for June 23, 1995,[4] or copies of any pleadings that might have been filed in the case since notification of the appeal. Seaman stated that it is her practice to notify new counsel of any pleadings or notices that she receives in connection with a case transferred to the FDIC and that if she had received notice of a pretrial conference or motions filed by the defendants, she would have notified counsel for the FDIC.

The FDIC also attached the affidavit of attorney Gale Kosto to the brief in support of its motion to open. Kosto attested that she had represented the FDIC as receiver from January 4, 1993, until April 11, 1995, in the appeal to this court and continued to represent the FDIC in this matter. This affidavit stated in pertinent part that she "had no notice of the assignment of pretrial, no notice of the entry of a nonsuit, and no notice of a motion to transfer, written or oral, from the court or anyone else, until January, 1997." In this affidavit, Kosto recounted her dealings with counsel for the defendants and how she had learned of the nonsuit in January, 1997, from an attorney representing the FDIC

---

[4] The nonsuit was rendered on June 23, 1995. The pretrial was scheduled for June 15, 1995.

in a federal district court action.[5] The FDIC further attached a letter from Kosto to counsel for the defendants dated September 15, 1995, suggesting that they schedule a conference call with the Superior Court case flow coordinator in New London to move the case along.[6] The FDIC further attached a letter from counsel

---

[5] The affidavit states in relevant part as follows:

"7. In April, 1995, shortly after the publication of the opinion reversing and remanding this matter for a new trial, I called [attorney Richard D.] Haviland to discuss plans for the new trial. . . . We discussed when the new trial might begin. Haviland said he thought the Court would calendar it in due time. He told me he was very busy.

"8. On September 15, 1995, having heard nothing from the court or from anyone else about the new trial, I called the clerk's office in Superior Court in New London to inquire about the Caldrello case, telling the person who answered the phone that it had been remanded for a new trial. She told me that the case must have 'fallen through the cracks.'

"9. I immediately called Attorney Haviland, left a message, and then, later in the day, hearing nothing from him, sent him the letter . . . dated September 15, 1995, in which I suggested that we make a conference call to Leslie Steiner, the Case Flow Coordinator, to see if we could move the case along.

"10. In the same mail, I sent an Appearance to the Superior Court.

"11. I heard nothing from the Court and nothing from Attorney Haviland.

"12. I first heard about the entry of a nonsuit in this foreclosure action from an attorney who represents the FDIC in the District Court action sometime toward the end of the first week in January, 1997. Attorney Douglas Poulin called to tell me that in the course of a telephonic pretrial conference in the case, now on appeal to the [United States Court of Appeals for the] Second Circuit, after a judgment in favor of the FDIC, Mr. Caldrello mentioned that the FDIC had been defaulted in the foreclosure action.

"13. I immediately called the Court, only to learn that the file could not be located. I then called Haviland to ask him [what] had happened. He told me that the 'default' had entered sometime between the time the case was remanded and September 15. Upon file review, he reported that he believed notice came to him only by word of mouth, not from the Court. . . .

"14. I asked Haviland if he had made any attempt to notify me when he heard of the pretrial. He replied that he had been under no obligation to do so. He said that someone at the FDIC must have gotten notice, and if the FDIC failed to notify its counsel, that was not his problem.

"15. I asked Haviland whether he believed that as a matter of professional courtesy and candor he should have at the very least responded to my September [15] 1995 letter to tell me that a nonsuit had entered sometime earlier. My note reflects his answer: 'Apparently not.' "

[6] We note that this letter, dated September 15, 1995, was sent to opposing counsel within four months of the entry of the nonsuit.

for the defendants dated January 13, 1997, stating that he had reviewed his file and could not find any documentation regarding the default.[7] Finally, the FDIC attached the affidavit of attorney Ivan Rivera, FDIC's in-house counsel assigned to supervise this case. Rivera stated in the affidavit that he searched the FDIC's files and found no documentary evidence or notice of any kind to show that the FDIC had been notified of a pretrial conference on June 23, 1995, or any other date.

Following oral argument, the court granted the FDIC's motion to open.[8] We conclude that the evidence submitted in support of the motion to open supports the conclusion that the FDIC did not receive notice of the nonsuit and that it timely filed its motion to open within four months of learning of the nonsuit.[9] The court, therefore, had the authority and properly granted the motion to open the judgment of nonsuit. Id., 747–48; *Habura* v. *Kochanowicz*, supra, 40 Conn. App. 592–93.

## II

The defendants next argue that the court improperly allowed the FDIC to introduce certain evidence and the

[7] The letter states in relevant part: "I have reviewed my file on this matter and I do not find any documentation regarding the default. My best recollection of what happened is that shortly after the foreclosure was remanded back to the trial court a pretrial was scheduled. I did not initially receive notice of that but found out somehow. I attended the pretrial and counsel for the FDIC did not appear, despite having been notified. I recall that your office was not notified, but someone did receive notice on behalf of the FDIC. At that time, Judge Hendel (I think) ordered a default against the FDIC."

[8] The motion was granted on the condition that the defendants be given ninety days to complete discovery, with no extension unless granted by the court.

[9] In so holding, we acknowledge the defendants' argument that the trial court specifically found that the FDIC had received notice. As the FDIC correctly points out, however, the defendants cite to portions of the transcript regarding notice of the pretrial conference, not notice of the nonsuit. A review of the transcript of the motion to open reveals that the court made no factual findings regarding whether the FDIC received notice of the nonsuit, and the defendants failed to request an articulation on this issue. See *Riggio* v. *Orkin Exterminating Co.*, 58 Conn. App. 309, 313, 753 A.2d 423, cert. denied, 254 Conn. 917, 759 A.2d 507 (2000).

testimony of a witness, which had not been disclosed to the defendants until the eve of trial. The FDIC counters that the court did not abuse its discretion in admitting evidence and testimony relating to certain records of the bank. We agree with the FDIC.

The following additional facts are necessary to our resolution of this claim. The contested evidence involved certain reductions in the defendants' loan balance. The defendants claimed at trial that payments had been made on the loan, resulting in the reduction in the balance. The FDIC countered that the reductions in the loan balance did not reflect payments, but were actually internal "write-downs," a practice used by the bank when the mortgage balance was not equal to the value of the mortgaged property.

The defendants filed a motion in limine dated April 27, 1999, arguing that certain documents that they received from the FDIC on April 15, 1999, regarding the loan balance should not be admitted into evidence. The defendants claimed that the trial was scheduled for April 27, 1999, and that disclosure of the documents at this late date amounted to "trial by ambush." During oral argument on the motion, counsel for the defendants argued that counsel for the FDIC had been in possession of the documents for almost one year and had not turned them over to him.

Counsel for the FDIC responded that the defendants had suffered no prejudice because the documents in question, certain debit and credit tickets, were backup documentation to five bank documents that had been supplied to the defendants prior to the May, 1998 trial date.[10] Counsel for the FDIC further stated that the individual who prepared the documents was present at trial and that counsel for the defendants would have

---

[10] It is undisputed that the case originally had been scheduled for retrial in May, 1998, but did not go forward at that time.

a full opportunity for cross-examination.[11] The court inquired of counsel for the defendants whether a continuance would be helpful to examine the documents, and counsel responded that it would not.[12] The court denied the motion in limine and allowed the introduction of the evidence.

"As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the admissibility of evidence. A trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and . . . evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing

[11] Counsel for the FDIC argued in relevant part: "The witness who is here to identify those documents is the person who prepared them, and Mr. Haviland will have an opportunity to cross-examine her to whatever extent he feels necessary to make sure that he understands these documents. There was no . . . intention whatsoever to conceal these from him. He already knew that we considered five entries charge-offs. He already knew that there was documentation from the bank, which he had seen, which referenced these charge-offs, and now we simply have more supporting documents."

[12] Counsel for the defendants argues that a continuance was discussed as a possibility, but was never actually offered to the defendants. The transcript reveals the following colloquy:

"The Court: Mr. Haviland, would it be of any benefit to you if this hearing were postponed so that you can have a further opportunity to examine these documents and prepare for cross-examination?

"[Attorney Richard D. Haviland]: Your Honor, quite frankly it probably wouldn't, but again this goes—this goes to the pattern here in the federal case of what's happening in discovery. We get it as a, you know—we get it basically as the FDIC decides we should get it.

"If this trial was scheduled for this time this spring, early, you know, beginning of February, if I had gotten it then, I wouldn't be objecting to it, but, you know—you know, there has to be an ending point to the production of documents as they see fit, and I don't think a continuance would do me any benefit in terms of this. But I think that at some point you have to say enough is enough."

by the defendant of a substantial prejudice or injustice." (Internal quotation marks omitted.) *Hayes* v. *Decker*, 66 Conn. App. 293, 298, 784 A.2d 417 (2001).

The defendants argue that they suffered substantial prejudice and that the court abused its discretion in admitting these documents and permitting the witness to testify. The defendants first contend that, in the absence of the witness and documents, the FDIC would have had a more difficult time proving its case as to the issue of write-downs and, second, that the late disclosure prevented the defendants from having an expert witness examine the documents and comment on them. On the basis of our review of the record, we conclude that these reasons are insufficient to show an abuse of discretion by the court or that the defendants suffered prejudice by the introduction of this evidence. The court heard argument that this evidence was merely supporting documentation of evidence previously disclosed to the defendants. Because the defendants already had notice of the FDIC's position that the five reductions in the loan balance were internal write-downs, the introduction of this evidence cannot be considered "trial by ambush." Furthermore, when questioned by the court, counsel for the defendants indicated that a continuance to review the documentation would not be helpful. Under these circumstances, we cannot say that the court abused its discretion in denying the defendants' motion in limine and allowing the FDIC to present the challenged evidence.

### III

The defendants' final claim is that the court improperly failed to adjust the verdict for the undisputed unclean hands of the FDIC. We disagree and conclude that the court properly declined to grant equitable relief to the defendants.

According to the defendants, it is undisputed that the bank lost a $300,000 check for a period of time, and then denied losing it, as did its successor, the FDIC. The defendants argue that as a result, checks written on Joseph Caldrello's business accounts bounced. The defendants contend that the bank did not give the persons to whom such checks had been written an explanation for the apparent lack of funds in the account and that as a direct result of the actions of the bank, they were unable to fulfill their obligations to the bank in paying the mortgage.

The court found, and we agree, that these claims were not properly before the court. The defendants' original counterclaim, dated November 7, 1989, contained no such allegations, and, in November, 1991, the court denied the defendants' request to amend the counterclaim to add such claims. The defendants did not challenge this ruling in their initial appeal to this court. *First Constitution Bank* v. *Caldrello*, supra, 37 Conn. App. 529.

Although that issue was not properly before the court, the court acknowledged that it had discretion, on equitable considerations and principles, to withhold foreclosure or reduce the amount of the stated indebtedness. *Hamm* v. *Taylor*, 180 Conn. 491, 497, 429 A.2d 946 (1980). The court, citing *Hamm*, further stated that it had the authority to extend the proceedings to enable the FDIC to respond to these claims. The court, however, held that, for several reasons, such action was not warranted in this case.

As the court properly found, the claims raised by the defendants are collateral to the mortgage foreclosure itself. The allegations involve conduct on the part of the bank that arguably caused damage to the defendants and reduced their ability to pay the mortgage. As the court held, however, there was no evidence that the

mortgage itself was unusual or unconscionable. Furthermore, the court found that, although the defendants entered into this transaction as individuals mortgaging residential real property, the alleged losses claimed were business losses suffered by the defendants' corporation. Finally, the court noted that these claims had been raised in a federal District Court action, which was resolved in favor of the FDIC. *Caldrello* v. *Federal Deposit Ins. Corp.*, United States District Court, Docket No. 3:93CV1560 (AHN) (D. Conn., June 25, 1996). We conclude, on the basis of these facts, that the court properly declined to grant equitable relief to the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.