FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
JOSEPH M. CALDRELLO ET AL.
(AC 23091)

Foti, Schaller and West, Js.

Argued May 7—officially released September 16, 2003

*Richard D. Haviland*, for the appellants (named defendant et al.).

*William E. Murray*, with whom, on the brief, was *Donald E. Frechette*, for the appellee (substitute plaintiff).

*Opinion*

WEST, J. The defendants Joseph M. Caldrello and Sandra V. Caldrello[1] appeal from the judgment of the trial court ordering that excess tax sale proceeds from the sale of certain of their real property be paid to the substitute plaintiff, Republic Credit Corporation I (Republic).[2] On appeal, the defendants claim that the court improperly determined that (1) there was no basis

---

[1] Several subsequent encumbrancers were named as defendants in this action but are not involved in this appeal. We refer in this opinion to the Caldrellos as the defendants.

[2] The Federal Deposit Insurance Corporation (FDIC) was the original applicant for the excess tax sale proceeds. On July 18, 2000, Republic filed a motion to substitute itself as the applicant in place of the FDIC following the transfer of the Caldrellos' note and mortgage from the FDIC to Republic. Republic's motion was granted by the court on the same day.

for a stay of execution pending a final judgment in a related foreclosure action, (2) they had not filed an application for the excess tax sale proceeds pursuant to General Statutes § 12-157 and (3) they had the burden of establishing that Republic was not a holder in due course. We affirm the judgment of the trial court.

The court found the following facts. The subject properties were sold at a tax sale on June 30, 1998, pursuant to § 12-157. The tax sale resulted from the alleged failure by the defendants to pay taxes on the properties. The Federal Deposit Insurance Corporation (FDIC), Republic's predecessor in interest, was the successful bidder at the tax sale and purchased the properties for $590,000. The amount paid by the FDIC exceeded the amount of all delinquent taxes, interest, penalties, fees and costs by a sum of $366,658.37. The properties were not redeemed pursuant to § 12-157 (f).

On October 25, 1999, the FDIC commenced an action seeking the return of the tax sale overage pursuant to § 12-157 (i) (2). The defendants filed an amended answer, including four special defenses and a counterclaim, on April 19, 2000. On October 29, 2001, Republic, as the substitute plaintiff, filed a motion seeking an order of payment of the excess tax sale proceeds or, in the alternative, a hearing on the matter. Republic's motion also requested that any existing stay of execution be lifted.[3] The defendants objected to Republic's motion on November 13, 2001. The court held a hearing on the application on January 30, 2002. The court issued a memorandum of decision granting Republic's motion for the payment of the excess tax sale proceeds on May 3, 2002. Additional facts will be set forth as necessary.

I

We first address the defendants' claim that the court improperly determined that there was no basis for a

[3] Republic denies that any such stay was ever agreed to, but nonetheless requested that any stay in effect be lifted.

stay of execution pending a final judgment in a related foreclosure action. In support of their claim, the defendants assert that a stay was in place at the time of the hearing pursuant to an agreement of the parties, made off the record, approximately two and one-half years earlier.[4]

The following additional facts are necessary for our resolution of the defendants' claim. The defendants executed a mortgage and note to First Constitution Bank (First Constitution) on November 22, 1988, in the amount of $2.2 million. First Constitution commenced an action to foreclose the mortgage due to nonpayment by the defendants in August, 1989. First Constitution was declared insolvent on October 2, 1992, and the FDIC was appointed as receiver. The FDIC was awarded a judgment of strict foreclosure against the defendants on October 7, 1999. *Federal Deposit Ins. Corp.* v. *Caldrello*, Superior Court, judicial district of New London, Docket No. 511581 (October 7, 1999). This court affirmed the foreclosure judgment on January 25, 2002. *Federal Deposit Ins. Corp.* v. *Caldrello*, 68 Conn. App. 68, 789 A.2d 1005, cert. denied, 260 Conn. 903, 793 A.2d 1088, cert. denied, 537 U.S. 824, 123 S. Ct. 111, 154 L. Ed. 2d 35 (2002).

The trial court in this matter found that the defendants remained indebted to Republic on the mortgage note in an amount exceeding the excess amount of the tax sale proceeds. At the hearing on the Republic's motion for the proceeds, on January 30, 2002, the defen-

---

[4] The defendants argue that if we find that the court improperly determined that there was no basis for a stay, then the court's action in effectively lifting that stay was improper because there was not a final judgment in the related foreclosure action and, should their appeal in that action be successful, they could win a sizeable judgment against the FDIC. The defendants argue that without a stay, there may be no funds remaining to satisfy any such judgment against the FDIC. Because we conclude that the court properly determined that there was no basis in the record to support a finding that a stay was in place, we do not reach that second issue.

dants argued that (1) there was a stay of disbursement of the proceeds from the sale of the property, and (2) that the stay should not be lifted because they intended to seek certification to appeal to our Supreme Court from the judgment of strict foreclosure and, therefore, the judgment was not yet final. On March 14, 2002, the Supreme Court denied their petition for certification to appeal before the trial court issued its memorandum of decision in this matter. See *Federal Deposit Ins. Corp.* v. *Caldrello*, 260 Conn. 903, 793 A.2d 1088, cert. denied, 537 U.S. 824, 123 S. Ct. 111, 154 L. Ed. 2d 35 (2002). In the defendants' brief to this court, they allege, for the first time, that the trial court improperly lifted the stay because it did not consider that the time period in which to file an appeal to the United States Supreme Court had not yet expired. The defendants filed a petition for a writ of certiorari with the United States Supreme Court, which, subsequent to the filing of their brief in this matter, was denied.[5] See *Caldrello* v. *Federal Deposit Ins. Corp.*, 537 U.S. 824, 123 S. Ct. 111, 154 L. Ed. 2d 35 (2002).

At the hearing regarding the excess tax sale proceeds, the trial court found nothing in the file indicating that

[5] Although the defendants argue that the court improperly lifted the stay while their petition for a writ of certiorari was pending before the United States Supreme Court, they did not follow the proper procedures for requesting such a stay. Pursuant to Practice Book § 71-7, "[w]hen the state supreme court has denied a petition for certification from the appellate court, any stay in existence at the time of such denial shall remain in effect for twenty days. Any party to the action wishing to extend such stay of execution or to otherwise obtain a stay of execution pending a decision in the case by the United States Supreme Court shall file a motion for stay with the appellate court. . . ."

Even if a stay of execution was in place at one time, the stay would have automatically expired twenty days following the denial of certification by our Supreme Court. Had the defendants wanted to extend the stay pending a decision by the United States Supreme Court, they were required to file a motion with this court pursuant to Practice Book § 71-7. Absent any such motion, the previous stay expired automatically on April 3, 2002.

the defendants had ever filed a motion for a stay or that the court had granted a stay. The sole evidence presented to support the existence of a stay was the representations made at the hearing by the defendants. Although the defendants claimed that the prior plaintiff, FDIC, had agreed to a stay, Republic submitted an affidavit by FDIC's attorney denying that any such agreement had been made. To bolster their claim that the parties had agreed to a stay, the defendants referred to the forbearance of Republic and the FDIC in demanding that they be paid the overage. Republic responded that it merely had been relying on, without confirming, the defendants' representations that FDIC had in fact agreed to such a stay. As the proceedings continued, however, and one action begat another, Republic's patience drew to a close, and it did contact prior counsel to confirm the agreement to a stay. The FDIC's prior counsel informed Republic that she had not agreed to any stay.

Notwithstanding the dispute over the existence of a stay, the court noted that the representations of the parties indicated that some type of informal stay had been agreed on at an earlier status conference. The court indicated, however, that it believed that such stay was only to be effective during the pendency of the trial action itself. The court further concluded that because there no longer was an appeal pending in the foreclosure action and the judgment of strict foreclosure was final, there was no basis for a stay and any stay that may have been granted in the past was lifted.

During oral argument before this court, Republic argued that the defendants' claim is moot on the basis of the United States Supreme Court's having denied their petition for a writ of certiorari to appeal. Republic argues that as a consequence of that denial, any stay that may have been in place terminated once there no longer was an appeal pending.

"Our standard of review regarding mootness is well settled. Mootness implicates the court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction . . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Schiavone* v. *Snyder*, 73 Conn. App. 712, 716, 812 A.2d 26 (2002).

"Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . Since mootness implicates subject matter jurisdiction . . . it can be raised at any stage of the proceedings. . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists. . . . An issue is moot when the court can no longer grant any practical relief. . . . Whenever a claim of lack of jurisdiction is brought to the court's attention, it must be resolved before the court can proceed. . . . The test for determining mootness of an appeal is whether there is any practical relief this court can grant the appellant. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals*, 71 Conn. App. 43, 46, 800 A.2d 641 (2002).

The defendants have predicated their claim that the court improperly determined that there was no basis for finding that the foreclosure action was stayed on the procedural posture of the case, specifically the outstanding option to take an appeal from the judgment of foreclosure. At the time of the hearing before the trial court, that argument was directed toward the possibility of appealing to our Supreme Court from the foreclosure judgment. Before this court, the defendants premised their argument on the then pending petition for a writ of certiorari to appeal to the United States Supreme Court. They argued, on those respective bases, that there was no final judgment in the underlying action. The defendants further argued that they potentially stood to obtain a significant judgment against the FDIC if their appeal to the United States Supreme Court was granted.

Because both the United States Supreme Court and, previously, our Supreme Court have denied the defendants petitions to appeal, the defendants' claim is now moot. The crux of the defendants' argument to this court rested on the theory that a successful appeal would reverse the judgment of strict foreclosure. With the denials of their petitions to appeal, that outcome no longer is a possibility. With the denial of the petition for a writ of certiorari by the United States Supreme Court, the foreclosure judgment became final and, as there are no other appeals pending, the defendants' arguments to this court no longer provide any support for their claim. Accordingly, there is no practical relief that this court can provide to the defendants, and, as such, the issue is moot.[6]

---

[6] Even if the issue is not moot, we are precluded from addressing it on the merits because it was improperly raised on direct appeal. The defendants asserted at oral argument that the issue is not moot because although the United States Supreme Court denied their petition for a writ of certiorari, they have raised issues relating to this matter in federal court, claiming that all the state court actions should be overturned. Although it is not clear what the defendants' federal claims are and whether they would affect this

## II

We now address the defendants' claim that the court improperly found that they did not file a timely application for the excess tax sale proceeds pursuant to § 12-157. In support of that claim, the defendants argue that § 12-157 requires only that they make a claim or application for the funds and that the statute does not set forth any specific form or manner in which an application must be filed. The defendants argue that the special defenses and counterclaim raised in their amended answer constitute an "application" under the statute. We agree with the court.

"To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 294, 823 A.2d 1184 (2003). General Statutes § 12-157 (i) (2) provides in relevant part that "the delinquent taxpayer, any mortgagee, lienholder or other encumbrancer whose interest in such property is affected by the sale may, within ninety days of the date the tax collector paid the moneys to the court, file an application with the court for return of the proceeds. . . . Notice of such application shall be served in the same manner as to commence a civil

court's finding of mootness, the absence of mootness would still not permit us to address their claim on direct appeal.

"Pursuant to Practice Book § 61-14, [t]he sole remedy of any party desiring the court to review an order concerning a stay of execution shall be by motion for review under Section 66-6. . . . Issues regarding a stay of execution cannot be raised on direct appeal." (Internal quotation marks omitted.) *East Hartford Housing Authority* v. *Morales*, 67 Conn. App. 139, 140, 786 A.2d 1134 (2001). Because the defendants did not file a motion for review, they are precluded from challenging the court's stay order. See id., 140–41.

The only avenue by which the defendants could have challenged the termination of the stay was through a motion for review. Because they did not comply with Practice Book § 61-14, and instead raised the issue on direct appeal, this court cannot review their claim.

action on all persons having an interest of record in such property on the date the collector's deed is recorded. . . ."

Although the defendants claim that the statute does not set forth any particular form or manner for such an application, that assertion is contrary to the language of the statute. Section 12-157 sets forth three requirements that must be satisfied by a party attempting to recover excess tax sale proceeds: (1) the party must file an application with the court, (2) the application must be filed within ninety days of the date the tax collector paid the moneys to the court and (3) the applicant must serve notice of the application in the same manner as to commence a civil action on all persons having an interest of record in such property.

The court in this case did not reach the issue of whether the special defenses and counterclaim constituted an "application" under the statute, nor did it need to do so. The court found that those pleadings were filed on April 19, 2000, almost nine months after the funds were deposited and far outside the ninety day deadline imposed by the statute. The court file contains the defendants' answer, date stamped on April 19, 2000. The defendants did not dispute that their answer was filed on that date. As such, the court's finding that the defendants did not timely file an application under the statute was not clearly erroneous in light of the date that this so-called application was filed. That was as far as the court needed to go, and as far as this court will go, in resolving the claim.[7]

---

[7] The court did, however, go one step further in its analysis and addressed the defendants' claim for the proceeds on the merits. The court found that "[e]ven *if the counterclaim were sufficient to constitute an application under General Statutes § 12-157,* the [defendants] are not entitled to receive the excess sale proceeds . . . . The [defendants] have failed to show any reason why the are equitably entitled to return of the tax sale proceeds." (Citation omitted; emphasis added.) Even if the finding by the court that no application had been made was improper, such error would be harmless because the court found that even with a proper application, the defendants

## III

The defendants' final claim asserts that Republic had the burden of proving that it was a holder in due course to be entitled to the tax sale overage pursuant to § 12-157 and that the court improperly shifted that burden to them.[8] In support of their claim, the defendants assert that the holder of a note must prove that it is a holder in due course. They further claim that status as a holder in due course is an essential element of Republic's claim to the proceeds and that Republic had the burden of proving each of the essential elements of its claim. We are not persuaded.

The defendants' claim presents an issue of statutory construction with regard to whether status as a holder in due course is an "essential element" that must be proven by a party seeking to recover excess tax sale proceeds under § 12-157. "Our review of a court's construction of a statute is plenary." *Friedman* v. *Meriden Orthopaedic Group, P.C.*, 77 Conn. App. 307, 314, 823 A.2d 364 (2003).

When interpreting a statute, "we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Courchesne*, 262

---

were not entitled to the proceeds. We will not review the propriety of those findings on the merits, however, because they have not been challenged on appeal.

[8] The defendants claim that "the trial court erred in concluding that [Republic] was a holder in due course." That is an inaccurate restatement of the court's decision. The court did not make a finding that Republic was a holder in due course. In fact, the court did not make any findings with regard to that issue because it determined that "[t]his claim has not been pleaded or briefed. Furthermore, the [defendants] have not offered any evidence in support of this claim. For these reasons, the court will not consider this claim."

Conn. 537, 577, 816 A.2d 562 (2003). "In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered." Id.

General Statutes § 12-157 (i) (2) provides in relevant part that *"the delinquent taxpayer, any mortgagee, lienholder or other encumbrancer whose interest in such property is affected by the sale* may, within ninety days of the date the tax collector paid the moneys to the court, file an application with the court for return of the proceeds. . . ." (Emphasis added.)

Although our Supreme Court recently eschewed the plain meaning approach to statutory interpretation;[9] *State* v. *Courchesne,* supra, 262 Conn. 537; "[t]his does not mean . . . that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Emphasis in original.) Id., 577–78. In this case, the plain meaning of the statutory language controls our decision because the defendants have not presented us with any extratextual support for any other interpretation of the words and we have found none.

---

[9] The legislature recently adopted Public Acts 2003, No. 03-154, § 1, reimplementing the plain meaning rule, which provides: "Section 1. (NEW) (*Effective October 1, 2003*) The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Emphasis in original.)

Section 12-157 (i) (2) does not require that an applicant for the proceeds be a holder in due course. The statute explicitly states in a clear and concise list those persons who are eligible to file such an application. That list includes the delinquent taxpayer or any mortgagee, lienholder or other encumbrancer whose interest in the property is affected by the sale of the property. Nowhere in § 12-157, in subsection (i) or otherwise, are the words "holder in due course" ever mentioned.[10]

Republic, as the holder of the defendants' mortgage, falls squarely into the group of eligible applicants authorized by the statute. No legislative history exists that indicates that a holder in due course requirement ever was intended or even entertained. We also have not found any case law, nor have the defendants brought any to our attention, that supports the defendants' interpretation of the relevant statute. We therefore conclude, consistent with the outer boundaries of *Courchesne*, that the plain meaning of the statute governs because the language used "appears to be *the* meaning and . . . appears to preclude any other likely meaning"; (emphasis in original) id., 577; that would include a holder in due course requirement. *Courchesne* also requires that "[i]n such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." Id., 577–78. In this case, in which we are asked to interpret clear language with no extratextual support for any other interpretation, we are satisfied with applying the plain meaning of the words. We conclude that an applicant's

---

[10] We find it noteworthy that the legislature included the phrase "holder in due course" in the text of twenty-four sections of the General Statutes and excluded it from the text of § 12-157. See General Statutes §§ 1-281, 42-136, 42a-3-103, 42a-3-106, 42a-3-202, 42a-3-203, 42a-3-206, 42a-3-302, 42a-3-305, 42a-3-306, 42a-3-308, 42a-3-312, 42a-3-402, 42a-3-413, 42a-3-601, 42a-4-104, 42a-4-205, 42a-4-211, 42a-4-407, 42a-5-109, 42a-9-102, 42a-9-331, 42a-9-403, 52-572g.

status as a holder in due course is wholly unrelated to the ability to collect excess tax sale proceeds pursuant to § 12-157. We conclude that the court correctly determined that Republic had no burden to prove that it was a holder in due course.

The judgment is affirmed.

In this opinion the other judges concurred.