GEOFFREY SCOTT JOHNSON ET AL. *v.* ATLANTIC
HEALTH SERVICES, P.C., ET AL.
(AC 23636)

Dranginis, Flynn and Hennessy, Js.

Argued February 10—officially released June 8, 2004

*Jeffrey R. Babbin*, for the appellants (defendants).

*Jeffrey C. Kestenband*, with whom, on the brief, was *Erik L. Kuselias*, for the appellees (plaintiffs).

*Opinion*

FLYNN, J. This appeal originated from an action sounding in negligence brought by Geoffrey Schiebel Johnson on behalf of the minor plaintiff, Geoffrey Scott Johnson, and individually by the parent plaintiffs, Joanne Johnson and Geoffrey Schiebel Johnson, against the defendants, Atlantic Health Services, P.C. (Atlantic), and Julian Hartt. The defendants appeal from the decision of the trial court, *Radcliffe, J.*, granting the plaintiffs' motion to open the judgment of dismissal and claim that the court improperly determined that the motion to open was timely under Practice Book § 17-4 (a).[1] We disagree with the defendants and affirm the order granting the motion to open.

---

[1] "[A]n order opening a judgment ordinarily is not a final judgment within [General Statutes] § 52-263. . . . [Our Supreme Court], however, has recognized an exception to this rule where the appeal challenges the power of the court to act to set aside the judgment." (Internal quotation marks omitted.) *Cusano* v. *Burgundy Chevrolet, Inc.*, 55 Conn. App. 655, 658, 740 A.2d 447 (1999), cert. denied, 252 Conn. 942, 747 A.2d 519 (2000).

The plaintiffs' complaint alleged the following facts. In August, 1997, it became evident to the parent plaintiffs that the minor plaintiff required medical care for which his father's employer provided insurance. Atlantic was consulted on the recommendation of the administrator of the plaintiff father's health insurance plan, Value Behavioral Health (administrator). When the parent plaintiffs consulted Atlantic, they met with its agent, the defendant Hartt, who insisted that the parent plaintiffs sign a contractual agreement obligating them to be responsible for payment of the entire amount of professional fees, not just the uninsured copayment. The plaintiff father refused to sign the agreement and Atlantic was not engaged. Instead, the parent plaintiffs obtained another recommendation from the administrator, which recommended Dr. Robert M. Koenig, a physician, to treat the plaintiff minor. The plaintiff father also contacted the administrator to report the defendants' procedures. The administrator informed the plaintiff father that the defendants should not have asked him to assume full responsibility for payment and that it would contact the defendants to correct the error.

The plaintiffs' complaint further alleged that Atlantic, acting through Hartt, contacted the department of children and families (department), made a bad faith report of medical neglect against the parent plaintiffs and disclosed the minor plaintiff's confidential medical information. The plaintiffs further claimed that the department conducted a thorough and extremely personal investigation and concluded that Hartt's complaint was a case of "false reporting" made in "retaliation" against the plaintiff father for making complaints against Atlantic. The plaintiffs' complaint sought monetary and compensatory damages, attorney's fees, punitive damages and interest and costs as a result of the defendants' conduct.

The following procedural history and chronology is important to a proper understanding of the plaintiffs' appeal. On August 21, 2000, the court, *Blue J.*, granted the defendants' motion to strike the complaint. Practice Book § 10-44 permits a party whose complaint has been struck to "file a new pleading . . . ." The rule further provides that when an entire complaint has been struck and that party fails to file a new pleading "within fifteen days" of the striking, the judicial authority may enter judgment on the stricken complaint. The defendants filed a motion for judgment on the stricken complaint on January 26, 2001. In granting the defendant's motion, Judge Blue issued a contingent order on February 13, 2001, that judgment on the stricken complaint would be granted "unless an amended complaint [was] filed by [March 1, 2001]." A clerk's notation on the motion indicated "2/14/01 JDNO/SCRAM SENT" and further stated "(See Memo at 131)."[2] No additional date appears on this motion. Nothing in the record indicates that any notice of actual judgment entering on the stricken complaint was sent to the plaintiffs. The plaintiffs claim that they mailed a revised complaint to the clerk's office on February 27, 2001. However, the clerk's date stamp on the revised complaint, indicating the date it was filed, read "March 7, 2001," a date six days after the deadline that was set by Judge Blue. The defendants filed an objection to the amended complaint on two grounds: (1) that it was untimely; and (2) that it sought to add new causes of action without the court's permission. The court, *Booth, J.*, sustained the objection on April 30, 2002, noting that Judge Blue's February 13, 2001 order had been "self-executing" and, therefore, judgment had entered in the defendants' favor on March 1, 2001.

[2] We note that "131" references the entry number in the case detail for Judge Booth's April 30, 2002 memorandum of decision, discussed later in the body of this opinion, which the plaintiffs claim constituted the first official notice of the judgment of dismissal.

The plaintiffs filed a motion to open the judgment of dismissal on August 29, 2002, which was granted by Judge Radcliffe on September 16, 2002. In an articulation of his order, Judge Radcliffe found that the plaintiffs' motion to open the judgment was timely filed in accordance with Practice Book § 17-4 (a), which provides that the four month period within which such motion may be filed commences from the "date on which notice was sent . . . ." The court noted that although the parties had received notice of Judge Blue's February 13, 2001 contingent order, the parties had never received notice that judgment of dismissal had entered pursuant to the contingent order. Rather, the court opined, the parties were not officially notified of the entry of judgment until Judge Booth's April 30, 2002 memorandum of decision was sent to them, explaining that judgment had entered on March 1, 2001. The court also noted that the dismissal was for procedural reasons and that confusion may have resulted concerning the status of the plaintiffs' amended complaint. The court therefore concluded that the plaintiffs should not be deprived of a decision on the merits of their claims.

On appeal, the defendants specifically claim that Judge Radcliffe improperly determined that notice of the judgment was not received until April 30, 2002. The defendants contend that the plaintiffs' failure to file the revised complaint by March 1, 2001, both caused the judgment of dismissal and comprised sufficient notice of the judgment because Judge Blue's order of judgment was self-executing. Therefore, the defendants argue, no official notice was required to have been sent to the parties, and the proper date for purposes of calculating the commencement of the four month period within which the plaintiffs were permitted to file a motion to open the judgment was March 1, 2001, rendering their August 29, 2002 motion untimely. We disagree.

The parties are in dispute as to the applicable standard of review of this claim. The defendants argue that the issue of whether further notice is required after noncompliance with a contingent order is a question of law and, as such, our review should be plenary. The plaintiffs maintain that the determination of whether notice was sent is a finding of fact and we should review the court's finding under a clearly erroneous standard. There was no dispute that the clerk did not send notice to the parties after judgment entered on March 1, 2001. The parties do dispute whether the motion to open was timely filed under Practice Book § 17-4 (a). We therefore find that the jurisdiction of the court has been challenged and apply the following standard of review. "When a motion to open is timely filed, our review is limited to whether the court has acted unreasonably or has abused its discretion. . . . When the motion to open is not timely and the time limitation has not been waived, however, the trial court lacks jurisdiction to open the judgment." (Internal quotation marks omitted.) *Federal Ins. Co.* v. *Gabriele*, 54 Conn. App. 459, 461, 735 A.2d 368 (1999). "A challenge to the jurisdiction of the court presents a question of law. . . . Our review of the court's legal conclusion is, therefore, plenary." (Citation omitted.) *Pitruzello* v. *Muro*, 70 Conn. App. 309, 313, 798 A.2d 469 (2002).

The defendants argue that the plaintiffs' noncompliance in failing to file an amended complaint by March 1, 2001, in effect, established sufficient notice of the fact that judgment had entered and cite *Osborne* v. *Osborne*, 2 Conn. App. 635, 638, 482 A.2d 77 (1984), in support of their claim. In *Osborne*, the trial court entered an order that a nonsuit would enter unless the plaintiff complied with the defendant's discovery requests within one week. Id., 637. She did not do so and judgment of nonsuit entered. Id., 637–38. The plaintiff argued that because she never had received notice of

the actual entry of the disciplinary nonsuit, no judgment of nonsuit had in fact entered, and the judgment should have been vacated. Id., 638. This court held that the failure to send notice or to enter judgment into the record did not affect the validity of the judgment of nonsuit. Id. We explained that "[a]n order of nonsuit terminates an action when it is issued and no further proceedings are necessary. . . . A judgment of nonsuit is a pro forma action of a clerk and [t]he clerk of the court is no longer required to mail a copy of the nonsuit to the party against whom it is directed. . . . It is of no consequence that the plaintiff did not receive further notice. The original notice was sufficient. The plaintiff was fully aware that a nonsuit was to enter unless she complied with the order." (Citations omitted; internal quotation marks omitted.) Id.

The strength of this precedent is challenged, however, by our holding in *Federal Ins. Co.* v. *Gabriele,* supra, 54 Conn. App. 462, in which we stated that "Practice Book § 17-4, formerly § 326, was amended in 1997 to provide that a motion to open or set aside a judgment must be filed 'within four months *succeeding the date on which notice was sent,*' changing former § 326, which provided that a motion to open or set aside must be 'filed within four months of the *entry of judgment.*' . . . Practice Book § 17-4 clarifies the issue of when the four month period commences by providing that the four month period does not commence until the date on which notice of the judgment is sent." (Emphasis in original.) *Federal Ins. Co.* v. *Gabriele,* supra, 462. We held that the court improperly relied on the date that judgment was rendered, rather than on the date that notice of the judgment was sent, in determining that the motion to open had been untimely filed. Id., 462–63.

The fact that Practice Book § 17-4 (a) was amended in 1997, thirteen years after *Osborne* was decided, persuades us that *Osborne* is no longer controlling on the

issue of whether notice must be sent when judgment has entered on an earlier contingent order. At the time *Osborne* was decided, according to § 17-4, formerly § 326, the date that judgment had entered was the only relevant date in terms of filing the motion to open.[3] Therefore, the actual date of notice was irrelevant to a determination of the timeliness of a motion to open. The problem that arises in applying § 17-4 (a), as amended, to this case is that the plaintiffs' noncompliance with Judge Blue's order was the only "notice" given to the parties that judgment had entered. If the date of judgment was still used to determine the date of commencement of the four month period within which to allow a motion to open, *Osborne* would still be persuasive. Here, however, we must determine the date on which the plaintiff was "sent notice" of the entry of judgment in accordance with the revised rule, which is difficult given that no actual notice was ever sent. Using the date that notice of the contingent order was sent, February 14, 2001, is not a fair solution because it does not comprise notice of the judgment, which was not set to enter until a future date, if in fact it was to enter at all. Such a solution also would be illogical due to our holding in *Federal Ins. Co.* that notice of the *judgment* must be sent, not simply any kind of notice. *Federal Ins. Co.* v. *Gabriele*, supra, 54 Conn. App. 462.

We conclude that it was not until Judge Booth, in his April 30, 2002 memorandum of decision, settled the

---

[3] Practice Book § 17-43, formerly Practice Book § 377, which sets forth the rule for opening judgments on default or nonsuit, was also amended in 1997. Prior to 1997, Practice Book § 377 provided: "Any judgment rendered or decree passed upon a default or nonsuit may be set aside within four months succeeding the date on which it was rendered or passed . . . ." See *G. F. Construction, Inc.* v. *Cherry Hill Construction, Inc.*, 42 Conn. App. 119, 120 n.2, 679 A.2d 32 (1996). Practice Book § 17-43 now provides: "Any judgment rendered or decree passed upon a default or nonsuit may be set aside within four months succeeding the date on which notice was sent . . . ."

disputed issue of whether the plaintiffs had complied with Judge Blue's order that the plaintiffs were given notice that judgment had entered against them. Notice is necessary to make a determination of the date that commences the four month period within which a party may file a motion to open a judgment. Noncompliance with a contingent order, by itself, cannot serve as notice of the resultant judgment.

Our conclusion is supported by the text of Practice Book § 17-4 (a), which provides in relevant part that a judgment may not be opened or set aside "unless a motion to open or set aside is filed within four months succeeding the date on which *notice was sent . . . .*" (Emphasis added.) The import of the phrase "notice was sent" cannot be overlooked in this case. We interpret this phrase in accord with its plain meaning, as our Supreme Court has held that "[t]he rules of statutory construction apply with equal force to Practice Book rules." *Grievance Committee* v. *Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984); see also *State* v. *Strickland*, 243 Conn. 339, 347, 703 A.2d 109 (1997) ("Practice Book provisions are interpreted in accordance with the same principles that guide interpretation of our General Statutes"). The plain meaning of this phrase is that notice of the judgment must be *sent* to the parties in order to determine the date that commences the four month period within which a party may file a motion to open. Therefore, the defendants' argument that the plaintiffs' noncompliance was adequate notice for purposes of applying § 17-4 (a) is belied by the text of the rule that states that notice must be sent before the four month time period will commence. We also note that § 17-4 makes no provision for contingent orders and does not affirmatively exempt such orders from the notice requirement.

Our holding is also consistent with the line of cases that has held that "the right to move to open and vacate

a judgment assumes that the party who is to exercise the right be given the opportunity to know that there is a judgment to open. . . . *Habura* v. *Kochanowicz*, 40 Conn. App. 590, 593, 672 A.2d 512 (1996). . . . Where the defendants have not received notice of the default judgment . . . the time within which they may move to set aside the judgment is extended by the delay in notification." (Citations omitted; internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Caldrello*, 68 Conn. App. 68, 71, 789 A.2d 1005, cert. denied, 260 Conn. 903, 793 A.2d 1088, cert. denied, 537 U.S. 824, 123 S. Ct. 111, 154 L. Ed. 2d 35 (2002); see also *Tyler E. Lyman, Inc.* v. *Lodrini*, 63 Conn. App. 739, 746, 780 A.2d 932, cert. denied, 258 Conn. 902, 782 A.2d 137 (2001). Finally, as we earlier noted, *Federal Ins. Co.* makes it clear that the notice provision set forth in Practice Book § 17-4 (a) refers to "notice of the judgment . . . ." *Federal Ins. Co.* v. *Gabriele*, supra, 54 Conn. App. 462.

Although normally we do not look to the opinions rendered by the Superior Court as authority, we find two Superior Court opinions particularly persuasive in our resolution of this appeal. These opinions deal with disciplinary nonsuits and the accidental failure of suit statute, but they serve to illuminate the problem that is caused for trial judges when notice of judgment is not sent by the clerk after a party fails to comply with a contingent order. In *Morales* v. *Medina*, Superior Court, judicial district of Hartford, Docket No. 590718 (November 2, 1999), Judge Beach was presented with a very similar issue where the court had ordered that a contingent nonsuit would enter "unless [the] plaintiff [complied] with [the] defendant's request for interrogatories and production within 30 days." (Internal quotation marks omitted.) The court examined this issue in terms of the application of General Statutes § 52-592, the accidental failure of suit statute, but made reference to the

similar problem presented in calculating the time period for motions to open. The court stated that "[w]hile it may at first blush seem rather fatuous to require formal notice where, as in this case, the plaintiff ought to have actual knowledge of the situation, there is no other practical way of establishing a clearly defined *modus operandi.*" (Emphasis in original.) Id.

The Superior Court addressed this issue again in *Golino* v. *Pereira*, Superior Court, judicial district of Hartford, Docket No. CV 00 0802482 S (November 5, 2001) (30 Conn. L. Rptr. 650, 651), in which it stated that "trial courts have struggled to find a consistent and fair means of resolving disputes as to the timeliness of motions to open . . . . A recurring theme . . . is the question of when the prior case terminated, when the context is an order granting a nonsuit unless compliance is made by a date in the future. . . . [Other Superior Court decisions have] decided that the only workable solution is to fix the operative date as the date of the sending of notice that the nonsuit . . . has actually entered. . . . [N]otions of fairness require the sending of a noncontingent notice stating that the nonsuit has entered, and the time allowed for pursuing the next step runs from the sending of that notice." (Citations omitted.)

Last, we observe that "[i]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." *Snow* v. *Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978). Further, "[o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure." (Internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 16, 776 A.2d 1115 (2001).

We conclude that because the first notice sent indicating that judgment had entered on March 1, 2001, was

the opinion of Judge Booth, of which the clerk sent notice to the parties on April 30, 2002, the court correctly determined that the four months within which the plaintiffs had to open the judgment had not yet run when the plaintiffs filed their motion to open the judgment on August 29, 2002.

The order granting the motion to open is affirmed.

In this opinion the other judges concurred.